Milligan, J.,
delivered the opinion of the court:
This case stands on demurrer, and we are bound to deal with it in the light of the record. The demurrer is general, and goes to the right of the plaintiff to recover on the grounds set up and relied on in his petition. The facts alleged are admitted by the demurrer, and present the petitioner in a most favorable light before the court. His case, if relief is denied him here, is a hard one, and without remedy, unless through the judgment o'f an appellate tribunal, or the intervention of Congress. And both, of these remedies involve delay, which is already an element of hardship in this case.
In July, 1859, the plaintiff imported a case of jewelry from Havre, in France, containing 45 mounted bracelets, and other valuable articles; and on its arrival at the port of New York, the case with its contents was.seized by the collector of the port, on the ground, that the invoice exhibited at the custom-house undervalued thé articles imported.
At the time of the seizure the petitioner avers he had paid the lawful duties on the case and its contents, amounting to’$278; and that after the seizure “a libel of information was *145 filed by tbe United States, in tbe District Court of tbe United States for tbe southern district of New York, and an action in rem was commenced by tbe United States against tbe case and its contents, to have tbe said goods condemned for undervaluation.”
Tbe petitioner appeared and defended tbe action — filed bis answer, and put the cause at issue. For more than two years, tbe petitioner alleges, be was ready and anxious to try tbe cause, but was defeated in all bis efforts to bring it to a bearing by tbe District Attorney for tbe United States.
In May, 1861, tbe petitioner entered tbe Union army, and continued in tbe service until October, 1863, when be was honorably discharged on account of wounds received in battle. On bis return to New York, and as soon as bis disabled condition admitted, be again renewed bis efforts to have bis cause brought to a final bearing, but was unable to succeed until December, 1867, when a verdict and judgment was rendered in his favor.
But, unhappily for tbe claimant, as shown in bis petition, before tbe rendition of the judgment.the case of jewelry and its contents were either lost while in tbe public storehouse -where they were first deposited, or in tbe removal of all goods seized by tbe United States from tbe storehouse to tbe seizure-room in tbe same budding. No subsequent search has enabled tbe petitioner to recover bis lost goods, and tbe verdict and judgment in bis favor have proved wholly fruitless.
Tbe goods were lost while in tbe custody of tbe United States under an unwarranted seizure, as shown by tbe judgment of tbe District Court of New York, and this suit is now brought directly against tbe United States to recover tbe value thereof.
Tbe goods were seized under tbe Act of .March 2,1799, (1 Stat. L., 627,) and this action is predicated on tbe 69th section, of tbe act, which is in tbe following words:
“That all goods, wares, and merchandise which shall be seized by virtue of this act, shall be put into and remain in tbe custody of tbe collector, or such other person as he. shall appoint for that purpose, until such proceedings shall be bad as by this act are required, to ascertain whether tbe same have been forfeited or not; and if it shall be adjudged that they are not forfeited, they shall be forthwith restored to tbe owner or owners, claimant or claimants.” * * *
By tbe S9th section of tbe same act, it is further provided,. *146 upon the application of the claimant, the court may appoint three proper persons to appraise the goods, &c., seized, and on the return of such appraisement, if the claimant shall execute a bond in the usual form, with one or more sureties, to be approved by the court, to the United States, for the payment of a sum agreed to, the appraised value of the goods, &c., sought to be delivered up, and also a certificate from the collector of the district wherein such trial is had that the duties on such goods, &c., have been paid or secured in like manner as if the goods, &c., had been legally entered, the court, by rule, shall order such goods to be delivered up to the claimant, and the bond shall be lodged with the proper officer of the court; and if judgment shall pass in favor of the claimant, the court shall cause such bond to be cancelled; but if judgment shall pass against the claimant as to the whole or any part of such goods, &c., and the claimant shall not within twenty days thereafter pay into court, or to the proper officer thereof, the amount of the appraised value of such goods, &c., with costs, judgment maybe entered without further delay upon the bond.
The revenue laws, although enacted at different times and extending through a long period, are all to be construed in pari materia, and as constituting but one system, and generally they are to be interpreted in favor of the revenue. But the law, under our system, makes the most ample provision for the protection of the importer. When goods are seized, as in the present case, the claimant, under the 89th section just referred to, may execute a bond and have them restored to him. But if no such bond is executed after such seizure, the goods remain in the custody of the collector, or such other person as he may appoint for that purpose, until and no longer than the proper proceedings are had, under the 89th section of the act of 1799, to ascertain whether they are forfeited or not. Such was the ruling of the Supreme Court of the United States in the case of ex parte Jesse Hoyt, (13 Peters R., 278,) and this decision has uniformly been followed since; and when applied to the case in hand, charges the collector or other person having the goods under his control at the time, the judgment of the district court of New York was passed in favor of the claimant, with the duty forthwith of returning them to the plaintiff. But this duty was not discharged, and the question now presented is, whether the failure of the United States officers to discharge a plain duty *147 imposed, by law upon tbem charges tbe government itself with the loss consequent upon the default of such officers'? And we think it does not. The act under which these goods were seized has been in force for more than three-quarters of a century, and no precedent for the action now prosecuted has been produced, and we apprehend, upon general principles, none can be found either in England or America. Such a doctrine is subversive of all good government, and if recognized generally would involve both the State and national governments in interminable litigation if not- in bankruptcy and ruin. A general law does not imply a contract with a citizen, which, upon its violation by the agent entrusted with its execution, he can enforce in damages against the government enacting it. It is a rule of civil action —alike applicable to all — and of necessity must be executed by human agents, who are liable to err, and often through negligence or misconduct fail to execute it with fidelity. Neither the law nor the government is responsible for such default, but the agents who fail to execute it. This principle runs through every department of the government — State and national ; otherwise every arrest and imprisonment for crime, after ad-judgment of acquittal, would be the cause of an action in damages against the State. Such has never been the practice in this country, and it is believed is nowhere the law.
But in this case we are not left to abstract reasoning or uncertain analogies. The authorities in our own books are direct and conclusive. In the case of the Appollon, Hilan claimant, (9 Peters, 362,) Judge Story, who delivered the opinion of the court, while discussing the very act under which this seizure was made, after drawing the distinction between captures jure belli and cases of municipal seizure, proceeds to say of the latter, u Probable cause has never been supposed to excuse any seizure, except when some ■ statute creates and defines the exemption from damages. The party who seizes, seizes at his peril, If condemnation follows, he is justified; if an acquittal, then he must refund in damages for the marine tort, unless he can shelter himself behind the protection of some statute.”
The very act under which the goods in question were seized, besides providing, as we have seen, for the restoration of the goods seized, upon the claimant’s executing a bond in the sum equal to their appraised value, also in the 89th section declares, “ that when any prosecution shall be commenced on account of *148 any ship or vessel, goods, wares, or merchandise, and judgment shall be given for the claimant or claimants, if it shall appear to the court before whom prosecution shall be tried that there was reasonable cause of seizure, the said court shall cause the proper certificate or entry to be made thereof, and in such case the claimant or claimants shall not be entitled to costs, nor shall the person who made the seizure, or the prosecutor, be liable to action, suit, or judgment on account of such seizure and prosecution: Provided, That the ship or vessel, goods, wares, and merchandise, be after judgment forthwith returned to such claimant, his, her, or their agent or agents.”
This provision of the statute as well as the construction put upon it in the case of the Appollon, before referred to, give the remedy directly against the collector, or person making the seizure, and not against the United' States, unless, indeed, such person can shelter himself under the provisions of the statute, and by a proper certificate or entry thereof show that there was reasonable cause for the seizure. In this case no such certificate is found in the record, and, without it, a judgment of acquittal on a proceeding in rein, not appealed from with effect, is conclusive in every inquiry before any other court that there was no justifiable cause. (Gilston v. Hoyt, 3 Wheaton Rep., 246; The Appollon, Edan claimant, 9 Wheaton Rep., 362.)
It follows, therefore, that in this case there was no obstacle in the plaintiff’s way, in enforcing his remedy against the party seizing his goods, and, having failed to avail himself of this mode of redress, or to execute the bond authorized by the statute and reclaim his goods, he cannot now hold the United States responsible in damages for his loss.
The demurrer sustained, and petition dismissed.