# Richmond

## FRANK K. WILSON AND SARAH E. WILSON V. STATE HIGH-WAY COMMISSIONER.

October 9, 1939.

Record No. 2142.

Present, All the Justices.

*George M. Warren, H. E. Widener* and *Hagan Richmond,* for the appellants.

*Abram P. Staples,* Attorney-General, for the appellee.

BROWNING, J., delivered the opinion of the court.

This case grows out of condemnation proceedings which were had by the Virginia State Highway Commissioner for the purpose of constructing a road, which is a part of the highway system of the State, through the lands, in Lee County, Virginia, of the plaintiffs in error, Frank K. Wilson and Sarah E. Wilson.

Five commissioners were appointed under the appropriate statute to ascertain what would be a just compensation for the land proposed to be taken, "and to assess the damages, if any, resulting to the adjacent or other property of said tenants and owners, or to the property of any other person, beyond the peculiar benefits that will accrue to such properties, respectively, from the construction and operation

of the said State Highway Commissioner's road and works."
Four of the five commissioners qualified and acted as such
and reported that the land to be taken and included in the
highway projected through the defendants' property was
5.48 acres, more or less, and that a just compensation for
the land so taken was $1150.00 and that the damages to
their property, by reason of the construction and operation
of the road and works, beyond the peculiar benefits that
would accrue to them, was $1625.00. The total sum allowed
was $2775, which was paid to and accepted by the defend-
ants.

Some fifteen months after the payment of this money to
them, the defendants, by notice of motion, instituted a suit
against the State Highway Commissioner, in his official ca-
pacity, and H. G. Shirley and W. W. McClevy, as individuals,
in the circuit court of Lee county, Virginia, for a judgment
for $10,000.00, which was alleged to be due the plaintiffs
because the defendants had been guilty of negligent and un-
lawful acts in the construction of the said highway, causing
the plaintiffs great injury and damage, which was not con-
templated by, and therefore not taken into consideration by
the commissioners, who assessed the damages occasioned by
the said road construction work.

The elements of the alleged damage were enumerated as
follows: The construction of a drain pipe under the road
which caused bad washes; the level of the road was so
changed as to make it difficult to drive from the barn to the
highway; the destruction of a pipe line conveying water to
the residence; injuries to a tenant house caused by blasting;
changing the approach to the tenant house; damming the
creek and causing its overflow because of rock and debris
thrown therein; injuries to a lot of some five acres by driv-
ing and parking trucks thereon; and causing the creek to
sink for a considerable portion of its course through the said
lands; and also for wrongfully and unlawfully taking ap-
proximately one-third of an acre of land belonging to the
plaintiffs, which was not included in the acreage already
referred to.

The notice of motion contained, in part, the following:

"Yet, notwithstanding the duty of the defendants, and each of them, under the law and under said condemnation proceedings, the defendants, and each of them, wholly failed to comply with their duty under the law under said condemnation proceedings, in that in the construction, completion and maintenance of said highway the said defendants, and each of them, through their servants, agents, employes and contractors, who were acting under their authority and at their discretion, proceeded to violate the rights of the plaintiffs in the following particulars, among others: Defendants, and each of them, greatly encumbered the portion of the farm, not condemned, and hindered the plaintiff from having the use, benefits, and enjoyment thereof in so large and ample a manner as they otherwise might or would have had."

\* \* \* \* \* \* \*

"All of the foregoing enumerated acts complained of by plaintiffs were unlawfully committed by the defendants, and each of them, by themselves, and through their servants, agents, and employees, and contractors in violation of the rights of plaintiffs and beyond the limits of the title and right acquired by the defendants in said condemnation proceedings; \* \* \* \*."

The notice of motion or pleading ended with the following averment:

"Wherefore, plaintiffs aver that they have been damaged by said negligent and unlawful acts of the defendants, and each of them, in the amount of $10,000.00, for which judgment will be asked as aforesaid."

The plaintiffs amended the notice of motion by laying claim to damages for the alleged unlawful and wrongful taking and appropriation of one-third of an acre of land which has been referred to.

The defendants filed a special plea to the notice of motion assailing the alleged right of a private individual to institute an action for damages against the Highway Commissioner as a public official and alleging that the damages

complained of resulted from torts alleged to have been committed by the Commissioner and that the State is not liable for the alleged torts of its agents and officers, and that the particular court was without jurisdiction to try and determine an action against the State Highway Commissioner, a public official of the Commonwealth.

Based upon the above reasons the State Highway Commissioner, appearing specially, moved that the action be dismissed.

The plaintiffs demurred to the special plea and motion to dismiss, asserting grounds therefor which, being reduced, present these questions or issues: That objection to the jurisdiction of the court can be raised only by a plea in abatement, and there is no such plea here; that the plea adopted and filed has the legal effect of submitting the parties defendant to the jurisdiction of the court and that the plaintiffs have the right to institute an action to recover for damages to land in any county where the land lies.

The court overruled the plaintiffs' demurrer and motion to strike the defendants' plea and sustained the motion of the State Highway Commissioner to dismiss the action. The plaintiffs then moved the court to dismiss the case as to H. G. Shirley and W. W. McClevy as individuals.

A number of interesting questions are raised in the printed briefs and are discussed with learning and ability, and, while they are of serious import, only one, we think, need be considered because its determination is conclusive of the case. This question is stated in the brief of the Commonwealth as follows: "May a landowner maintain an action at law in any court against the State for damages to his land resulting from negligent and tortious acts of the officers and employees of the State Department of Highways committed in connection with the construction of the highways?"

It is perfectly patent that the action under consideration is such an one as is contemplated by the question. The notice of motion expressly charges the Highway Commissioner with the commission of negligent and unlawful acts, in violation of law and of his duty as an officer of the State.

This is accentuated by the fact that H. G. Shirley and W. W. McClevy, who were originally impleaded as defendants, were dismissed, as individuals, at the instance of the plaintiffs. There can be no mistake as to the character of the identity of the remaining defendant. It is the State Highway Commissioner, an official of the government of the State of Virginia. His official relationship, as an agent, would fix liability, if any there be, upon his principal, the State, but for the fact that the acts relied upon to create such liability, were wrongful, unlawful, negligent and tortious.

█ █ It has long been settled that a state cannot be sued without its consent, in any event. That finds its origin in what may be termed a legal tradition. By stronger reasoning is it true that the State is immune from suability on account of the torts of its agents and officials. Nowhere have we seen this more aptly and tersely stated than in the work entitled A Treatise on the Law of Torts (Bohlen and Harper), page 665, section 297:

"Neither the United States nor one of the States can be sued without its consent. The origin of this doctrine, it seems was the personal immunity of the Crown in English legal and political theory. Later, when the more complicated theory of the 'state' replaced the concept of the individual 'sovereign,' the nonsuability of the government was an attribute inherited from the older order. Like many other historic anomalies, it has caused much embarrassment in the modern social and legal structure.

█ "But the immunity of the state for the tort of its servants and agents does not rest entirely upon the fact that the state can not be sued. It is said to rest on public policy, the incongruity of a 'wrong' by the state, and upon dubious grounds of the law of agency whereby an agent of the state is always regarded as acting outside the scope of his agency when he is committing a tortious act. 'It is also true, in respect to the state itself,' said the Supreme Court of the United States, 'that whatever wrong is attempted in its name is imputable to its government and not to the state,

for, as it can speak and act only by law, whatever it does say and do must be lawful. That which, therefore, is unlawful because made so by the supreme law, the Constitution of the United States, is not the word or deed of the state, but is the mere wrong and trespass of those individual persons who falsely speak and act in its name.' * * *

■ "Accordingly, a statute permitting suit against the state, does not render it liable for the tort of its agents. Such statutes, it is argued, provide merely a remedy for the enforcement of liabilities existing independent thereof; they do not create liability for 'official torts.' "

It may be conceded that the acts of the State Highway Commissioner charged in the notice of motion are torts. This is so plain that it needs not to be elaborated.

This nonsuability of the State by an individual and the State's immunity from liability for the torts of its agents is positively expressed in the case of *Smith* v. *State*, 227 N. Y. 405, 125 N. E. 841, 842, 13 A. L. R. 1264:

"It is true, as urged, that the section confers upon the Court of Claims jurisdiction of the broadest character. The state, under the terms of the section, must be treated as having waived its immunity against actions as to all private claims. *People ex rel. Swift* v. *Luce*, 204 N. Y. 478, 97 N. E. 850, Ann. Cas. 1913C, 1151; *People ex rel. Palmer* v. *Travis*, 223 N. Y. 150, 119 N. E. 437. But it is thoroughly established that by consenting to be sued the state waives its immunity from action and nothing more. It does not thereby concede its liability in favor of the claimant or create a cause of action in his favor which did not theretofore exist. It merely gives a remedy to enforce a liability and submits itself to the jurisdiction of the court, subject to its right to interpose any lawful defense. ,*Roberts* v. *State of New York*, 160 N. Y. 217, 54 N. E. 678. Immunity from an action is one thing. Immunity from liability for the torts of its officers and agents is another. Immunity from such liability may be waived by some positive enactment of the Legislature. This, as I read the section of the Code under consideration, the Legislature has not yet done.

"Statutes in derogation of the sovereignty of the state must be strictly construed, and a waiver of immunity from liability must be clearly expressed. *Litchfield* v. *Bond*, *supra* [186 N. Y. 66, 78 N. E. 719]. There certainly is not in the section an express waiver of the state's immunity from liability for the tortious acts of its officers and agents, and the words used will not, in my opinion, permit of such construction. * * *."

We note that, in the State of New York, a Court of Claims was established in which claims against the State were prosecuted and adjudicated and, under the provisional statutory section the State is treated as having waived its immunity against such action. In the opinion in the case cited it is suggested that some positive legislative enactment might effect a waiver by the State of immunity from liability for the torts of its officers, but that that had not yet been done. We comment that neither has it been done in Virginia.

In the case of *Commonwealth* v. *Chilton Malting Company*, 154 Va. 28, 152 S. E. 336, a shipment of malt was seized *in transitu* by Virginia prohibition officers on the theory that it was for use in the manufacture of ardent spirits. The seizure was made in Roanoke and as no one came forward to claim the malt and its owner could not then be found, it was delivered to the Virginia Polytechnic Institute, a State institution, where it was fed to cattle which belonged to it. The officers, in making such disposition of the material, exceeded their authority and the Chilton Malting Company sued the State, in the Circuit Court of the city of Richmond, basing its claim on an implied contract to pay for the malt. Judgment was rendered for the plaintiff. This court reversed the judgment of the trial court and said, through the late Judge Prentis:

" * * * Instead of suing the persons who committed the alleged tort, the Commonwealth is sued upon the false assumption that it has converted the property to its own use and derived some benefit therefrom. * * *

"It seems to us, then, that this case cannot be maintained against the Commonwealth, because it is based upon a tort, and it is not true that after the alleged tort the property was converted to the use of the Commonwealth. * * *"

It is clearly seen that this court recognized that the wrongdoers might be sued individually for their torts but decried the notion that the Commonwealth could be sued therefor.

The Supreme Court of the United States, in this connection, had this to say in the case of *Robertson* v. *Sichel*, 127 U. S. 507, 515, 8 S. Ct. 1286, 1290, 32 L. Ed. 203:

"* * * The government itself is not responsible for the misfeasances, or wrongs, or negligences, or omissions of duty of the subordinate officers or agents employed in the public service; for it does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs; since that would involve it, in all its operations, in endless embarrassments, and difficulties, and losses, which would be subversive of the public interests. Story on Agency, sec. 319; *Seymour* v. *Van Slyck*, 8 Wend. [N. Y.] 403, 422; *United States* v. *Kirkpatrick*, 9 Wheat. 720, 735 [6 L. Ed. 199]; *Gibbons* v. *United States*, 8 Wall. 269 [19 L. Ed. 453]; *Whiteside* v. *United States*, 93 U. S. 247, 257 [23 L. Ed. 882]; *Hart* v. *United States*, 95 U. S. 316, 318 [24 L. Ed. 479]; *Moffat* v. *United States*, 112 U. S. 24, 31, 5 S. Ct. 10 [28 L. Ed. 623]; *Schmalz's Case*, 4 Ct. Cl. 142."

"The government does not guarantee the integrity of its officers nor the validity of their acts. * * * * They are but servants of the law and, if they depart from its requirements, the government is not bound." *Moffat* v. *United States*, 112 U. S. 24, 31, 5 S. Ct. 10, 13, 28 L. Ed. 623, 625.

The landowners further contend that the portion of the highway through their lands has not been constructed in accordance with the plats and drawings used in the condemnation proceedings. We are impressed with the soundness of the position of the Attorney General of the State with respect to this contention. If it was due to the torts of the agents of the Highway Commission then there can be no liability against the State, but if there was a lawful and

proper change in the plans by the road officials, and the landowners were aggrieved thereby to the extent of damage or injury, the Highway Commissioner might institute new condemnation proceedings, of his own volition, to ascertain increased damages on account of the change in the plans, indeed he might be compelled to do this by mandamus proceedings. This observation is alike applicable to the alleged fact that one-third of an acre was taken, which was not within and therefore not considered in the condemnation proceedings.

As we have before stated, the plaintiffs were awarded by the commissioners the sum of $2775.00, which contemplated the damage for the land taken and such consequential damages to the other lands of the plaintiffs as might have been suffered.

 It appears that the highway, with its offending incidents of construction, passes through a portion of a large farm in a rural district, not in proximity to a municipality, of which it occupies about five and one-half acres. Ponder the price which the State has had to pay for it. If we lump the two items of damage, and express the award in terms of acreage cost, it would be $500.00, and more, per acre. The notion is rather insistent that the owners have been amply compensated, and if this be true, errors, if any, are of but academic interest.

 We are not impressed with the contention of the plaintiffs that the failure on the part of the defendant to file a formal plea in abatement was a submission to the jurisdiction of the trial court, nor do we think that such a plea was necessary. It is manifest, we think, that the subject matter of the suit made it clear that the court was without the authority and power to entertain it.

 In Burks' Pleading and Practice, Second Edition, page 340, section 195, we find the following quotation: "By jurisdiction over the subject matter is meant the nature of the cause of action and of the relief sought; and this is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its

powers, or in authority especially conferred. Want of jurisdiction of the subject matter may even be taken notice of by an appellate court *ex mero motu* for the first time."

In the same work, at page 260, section 172, is the following: "The chief use of a plea to the jurisdiction in Virginia arises out of actions brought in the wrong county or corporation. Jurisdiction of the subject matter is fixed by statute, and objection on that account may be raised, not only by a plea in abatement, but by motion, or in almost any other way."

In *Thacker* v. *Hubard and Appleby,* 122 Va. 379, 94 S. E. 929, 21 A. L. R. 414, this was said: "After defendant's demurrer and pleas had been rejected, he then moved the court to dismiss the proceedings because a court of law was without jurisdiction in cases of that kind. In other words, the ground of the motion was because the court had no jurisdiction of the subject matter. The motion was a proper one, and the court rightly entertained it. * * * If the court had no jurisdiction of the subject matter, then the motion should have been sustained and the proceeding dismissed."

It is obvious that we think the court was plainly right in dismissing the action.

It is stressed in the briefs on both sides of the controversy that this case is important and that there are other pending cases, similar in import, awaiting its decision. The issues raised in those cases will have to be decided by this court when they are presented. The present case will have to go off on the points we have discussed. It is not necessary to say more.

We affirm the judgment of the trial court.

*Affirmed.*