# Richmond

## NELSON HICKS v. JAMES A. ANDERSON, STATE HIGHWAY COMMISSIONER.

January 24, 1944.

Record No. 2712.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Walter H. Carter* and *William Kinckle Allen,* for the petitioner.

*Abram P. Staples, Attorney General,* and *Walter E. Rogers, Assistant Attorney General,* for the respondent.

GREGORY, J., delivered the opinion of the court.

The petitioner, Nelson Hicks, is and has been for many years, the owner of a farm in Amherst county, which fronts on Route No. 636, formerly an old county highway. It was a dirt road, and frequently out of repair. In 1932 it was taken over by the State from the county as a secondary road. It ran approximately parallel to Harris creek. Harris creek runs through the middle of the bottom lands of the petitioner which lie between the hills belonging to one Russell J. Burford on the one side and other lands belonging to the petitioner. This highway, as it was originally located, ran along the edge of the bottom lands and at the base of the steep hillsides on the Burford lands. This old road marked the boundary line between the property of the petitioner and that of Burford.

When the road was taken over by the State in 1932 it was in very bad condition, and was nothing more nor less than a trench in some places. It had washed until it was some two or three feet below the bottom lands of the petitioner. The heavy rains falling upon the hillsides of the Burford lands drained into the old road and would carry dirt and deposit it there, from which place it would be carried along the old dirt road into Harris creek near the bridge.

In 1933 the State changed the location of the road and placed it along the lower side of the Burford uplands at varying distances of from 15 to 45 feet from the old location. The new location was entirely upon the lands of Burford.

Since the new road has been constructed, the rain waters falling upon the Burford hillsides have washed soil through the culverts which were placed under the new road, down into the old roadbed. At first the old roadbed was so kept by the State Highway Department that the waters and soil would be carried off upon it, but later it was allowed to be filled up with the washed soil to such an extent that at the present time, and for two or three years, the waters and the soil are now carried across to the petitioner's bottom lands, and the soil deposited there, causing considerable damage.

At the beginning it is apparent, from the evidence which has been taken, that the claim of the petitioner is founded in absolute good faith, and is supported by substantial evidence, though that offered by him, in many respects, is in conflict with that offered by the defendant.

The petitioner claims that his bottom lands have been damaged by the drainage of the waters over it, and the deposit of soil and silt on it. He claims that the waters have been collected by a system of ditches dug in the uplands by the agents of the defendant, and directed by drain pipes under the new road, which discharge the waters in great volume, and cause them to flow over his bottom lands. There is evidence tending to show that a substantial volume of the water which is thus discharged and flows on the

petitioner's lands is collected and drained in this direction by the use of artificial ditches, whereas, if left to flow in its natural course, it would go in another direction to the creek.

The State Highway Commissioner contends that if any damage has been caused to the petitioner's lands it has been by the natural erosion of the soil on the Burford hillsides and its deposit upon the petitioner's lands, for which result the Commonwealth of Virginia is not responsible. He denies that any damage was caused to the lands of the petitioner as a result of the construction of the road on its new location, or by the replacement of the bridge over Harris creek in 1938.

The petitioner, being without any other remedy, prays for a peremptory writ of mandamus to compel the State Highway Commissioner to institute and conduct condemnation proceedings under Code, sec. 1969j(2) of the Code (Michie), to ascertain the damages of the petitioner occasioned by the construction of the said highway.

It is alleged in the petition that for several months before it was filed, the petitioner requested and urged the State Highway Commissioner to institute condemnation proceedings to ascertain his damages, but this he always refused to do.

The issue between the parties is whether or not the lands of the petitioner were damaged by reason of the construction of the new road. If they were so damaged, he is entitled to compensation. Constitution of Va., sec. 58. In no way other than through condemnation proceedings can he enforce his right to compensation, for he is not permitted to sue the State.

In *Wilson* v. *State Highway Com'r*, 174 Va. 82, 4 S. E. (2d). 746, we expressly held that a landowner is not allowed to maintain an action at law in any court against the State for damages to his land resulting from the negligent and tortious acts of the officers and employees of the State Department of Highways committed in connection with the construction of highways. See also *Sayers v. Bullar*, 180 Va. 222, 22 S. E. (2d) 9.

The Attorney General in his brief in the *Wilson case* stoutly maintained that the only remedy of a landowner for compensation for damages to land arising by reason of the construction of a highway was under Code, sec. 1969j(2), which, as we have seen, provides for the institution of condemnation proceedings. He further maintained that if the Highway Commissioner takes land without instituting condemnation proceedings, and fails in his mandatory duty to institute such proceedings within 60 days after the completion of the highway, then the landowner may require the commissioner, by mandamus, to perform this ministerial duty imposed upon him by that section. And he states that this rule applies, not only where land is actually taken, but also where no land is taken but damages alone flow from the construction of the highway. He concludes:

"It is elementary that, where the legislature has provided a remedy for the ascertainment of the validity and amount of claims against the State, that remedy, and that alone, must be followed by the person seeking compensation."

In the *Wilson case* we held, in accordance with the contention of the Attorney General, that if the Highway Commissioner refused to institute condemnation proceedings to ascertain the damages of a landowner arising from the construction of a highway, a mandamus might be awarded against him to compel him to institute such proceedings.

In the case at bar, we are of opinion that the State Highway Commissioner should institute the necessary condemnation proceedings against the petitioner, to the end that the petitioner's damages, if any, may be ascertained and paid to him. For this purpose a peremptory writ of mandamus will be issued by this court.

*Mandamus awarded.*