## Richmond

ERIK J. ERIKSEN AND LOUISE CLOSE ERIKSEN v. JAMES A. ANDERSON, STATE HIGHWAY COMMISSIONER.

January 25, 1954.

Record No. 4221.

Present, All the Justices

The opinion states the case.

*Shackelford & Robertson,* for the petitioners.

*J. Lindsay Almond, Jr., Attorney General, C. Champion Bowles, Assistant Attorney General* and *J. Eldred Hill, Jr.,* for the respondent.

SPRATLEY, J., delivered the opinion of the court.

In this original proceeding in mandamus the petitioners, Erik J. Eriksen and Louise Close Eriksen, seek a peremptory writ from this court to compel James A. Anderson, State Highway Commissioner, to institute condemnation proceedings against them for the purpose of ascertaining what damages, if any, have been occasioned their property by the negligent operation of a stone quarry by the said State Highway Commissioner.

Briefly stated, the material allegations in the petition for the writ are these:

1. That petitioners are the owners of a large farm upon which are located valuable improvements, consisting of a mansion house, tenant houses, stables, barns and other outbuildings.

2. That the State Highway Commissioner has leased a portion of an adjoining farm, owned by E. S. Brooking, and upon it has, through his servants, agents and employees, negligently operated a quarry to supply stone for the construction of public roads.

3. That the "careless, reckless and wanton operation of said quarry" by the servants, agents and employees of the said Highway Commissioner has damaged and rendered unsafe the properties of the petitioners.

4. That since the Highway Commissioner has refused to compensate petitioners for the damages to their properties, and "they are advised they are not permitted, under the law, to bring suit against the Commissioner," to recover for the loss and injury, and are otherwise without sufficient and adequate remedy, they pray that a peremptory writ of mandamus be issued directing the Highway Commissioner to institute condemnation proceedings against

them for the purpose of ascertaining and determining their damages, if any.

James A. Anderson, State Highway Commissioner, filed his answer denying that the alleged tortious acts of his agents imposed any liability against the State. He averred that he had refused to institute condemnation proceedings, because he was without authority to institute such proceedings to ascertain damages to property caused by the tortious acts of his agents. He prayed that the petition for the writ be dismissed.

In a stipulation between the parties, it is agreed that the facts alleged in the petition present a question of law, and that, insofar as may be necessary for the determination of the legal question involved, such facts are to be considered as true, without prejudice to the rights of the parties in any subsequent proceedings.

The pleadings and the stipulation thus clearly show that this proceeding is based upon the negligent and tortious acts of the servants, agents and employees of the State while engaged in an operation for "public uses," as defined by § 15-702 of the Code of Virginia, 1950.

The legal question, therefore, presents the sole issue: May a landowner hold the State liable for damages to his land resulting from the negligent and tortious acts of the officers and employees of the State Department of Highways committed in connection with the construction of the highways?

In Virginia, we have followed the traditional rule that the State is immune from liability for the tortious acts of its servants, agents and employees, in the absence of express constitutional or statutory provisions making it liable.

In *Wilson* v. *State Highway Commissioner*, 174 Va. 82, 89, 4 S. E. (2d) 746, this is said:

"It has long been settled that the State cannot be sued without its consent in any event. That finds its origin in what may be termed a legal tradition. By stronger reason-

ing is it true that the State is immune from suability on account of the torts of its agents and officials."

In *Sayers* v. *Bullar*, 180 Va. 222, 22 S. E. (2d) 9, we find on page 225:

"A State cannot be sued except with its permission and even if the suit, in form, be against the officers and agents of the State, yet if, in effect, it be against the State it is not maintainable. Sections 2578 to 2583 of Virginia Code, (Michie), [now sections 8-752 and 8-757 of Code of Virginia, 1950], provide the only cases and the procedure in which actions may be maintained against the State. There is no statute which gives a right to anyone to sue the State for tort. *Commonwealth* v. *Chilton Malting Co.*, 154 Va. 28, 152 S. E. 336."

See also Michie's Digest of Va. and W. Va. Reports, Vol. 9, pages 14 and 15, and Vol. 5, Permanent Supplement, pages 468 and 469, where the cases are collected and digested.

In 49 Am. Jur., States, Territories and Dependencies, § 76, page 288, is this statement:

"The rule is well settled that the state, unless it has assumed such liability by constitutional mandate or legislative enactment, is not liable for injuries arising from the negligent or other tortious acts or conduct of any of its officers, agents, or servants, committed in the performance of their duties. In other words, the doctrine of respondeat superior does not apply to sovereign states unless through their legislative departments they assume such liability voluntarily."

In 81 C. J. S., States, § 130 a., page 1137, we find:

"As a general rule, in the absence of constitutional or statutory provision therefor, a state exercising governmental functions cannot be made to respond in damages for tort, and such sovereign immunity may not be waived or abrogated except by an express statutory enactment or by necessary inference from a statute."

See also *State* v. *Sims*, 130 W. Va. 430, 43 S. E. (2d) 805, 815, 172 A. L. R. 1389.

In an effort to distinguish these authorities, petitioners rely upon the case of *Hicks* v. *Anderson*, 182 Va. 195, 28 S. E. (2d) 629. Hicks, a landowner, applied for a writ of mandamus to compel the State Highway Commissioner to institute condemnation proceedings to ascertain the damage occasioned his land by the drainage of water over it, and the deposit of silt upon it, in the relocation of a highway. The State Highway Commissioner contended that if any damage had been caused petitioner's land, it was due to the natural erosion of soil from the hillsides of an adjoining owner, and its deposit upon the petitioner's land, for which result the State was not responsible. The issue of negligence on the part of the servants, agents and employees of the State was not raised by either party. The single issue was whether or not the land had been damaged by reason of the construction of the new road, (182 Va. at page 198), not by acts of negligence in its construction. In the determination of that issue, we held that petitioner was entitled to have the writ issued because his lands had been damaged by the construction of the new road, and there was no other way than through condemnation proceedings whereby he could enforce his right of compensation.

The pleadings and stipulation in this proceeding present an entirely different case. They present the specific issue whether the Commonwealth of Virginia is liable for the tortious acts of her servants, agents and employees. Here petitioners expressly charge that the damages to their property were caused by the "careless, reckless and wanton" acts of the "State Highway Commissioner, through his servants, agents and employees," as distinguished from lawful acts within the scope of their employment.

The Attorney General, in his brief, says that: "If the petitioners in this proceeding had alleged a public damage to their property by the State, acting through her Highway

Commissioner, his servants, agents and employees there would have been no alternative but to have condemned their property to determine the damage." This is the same position which was taken by the Attorney General in *Wilson* v. *State Highway Commissioner, supra,* 174 Va. page 92, and in *Hicks* v. *Anderson, supra,* 182 Va. page 199.

Petitioners concede that the State is immune from acts of tort and cannot be sued without its consent. They contend, however, that this is not a proceeding against the State for a tort, but a proceeding under the eminent domain statutes to require the State to compensate them for property damaged for the public use. They insist that under § 58 of the Constitution of Virginia, which provides, in part, that the General Assembly "shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation, * * * ", the State is liable for the damages here claimed whether they were caused by lawful or negligent operation of the stone quarry.

Section 33-57 of the Code of Virginia, 1950, invests the State Highway Commissioner with the power of eminent domain, insofar as may be necessary for the construction, maintenance and repair of the highways of the State, and with such incidental powers as may be necessary to accomplish those purposes, including the operation of quarries deemed useful or necessary.

Both § 58 of the Constitution and § 33-57 of the Code provide for lawful acts. Neither has any application to unlawful or negligent acts of the servants, agents and employees of the State Highway Commission, which may result in damage to a property owner. There is no statute which authorizes the officers or agents of the State to commit wrongful acts. On the contrary, they are under the legal obligation and duty to confine their acts to those which they are authorized by law to perform. If they exceed their authority, or violate their duty, they act at

their own risk, *Sayers* v. *Bullar, supra,* 180 Va. page 230, and the State is not responsible or liable therefor.

The prohibition of § 58 of the Constitution against the enactment of laws permitting the taking or damaging of private property, without just compensation, has no application to acts committed in violation of law. The eminent domain statutes provide adequate and sufficient remedy for the taking and damaging of private property in a lawful manner. The negligent acts of public officials or agents in the carrying on of a public duty or function cannot be regarded as acts of the government itself, nor can it be inferred from either the Constitution or the eminent domain statutes that the State has voluntarily assumed liability for the tortious acts of its officers and agents committed in violation of law.

"The Government does not guarantee the integrity of its officers nor the validity of their acts. * * * They are but servants of the law and, if they depart from its requirements, the Government is not bound. * * * ." *Moffat* v. *United States,* 112 U. S. 24, 31, 5 S. Ct. 10, 13, 28 L. ed. 623, 625.

In 2 A. L. R. (2d), beginning at page 677, there is an exhaustive annotation entitled: "Damage to private property caused by negligence of governmental agents as 'taking' 'damage,' or 'use' for public purposes, in constitutional sense." Cases from many jurisdictions are reviewed, and the decisions show a wide divergence of opinion. They have turned upon the specific constitutional and statutory provisions under review, and upon various factors and theories which appealed to the particular court.

In conclusion, we are of opinion that the State Highway Commissioner is without authority to institute condemnation proceedings for the purpose of determining damages occasioned by the tortious acts of his agents. Condemnation commissioners, in assessing damages, are restricted to those arising from the authorized and lawful acts of the servants, agents and employees of the State.

This conclusion accords with the opinion previously indicated by this court in *Wilson* v. *State Highway Commissioner, supra*. There, speaking with reference to the charge that a portion of the highway had not been constructed in accordance with the plats and drawings used in a condemnation proceeding, we said:

"If it was due to the torts of the agents of the Highway Commission then there can be no liability against the State, but if there was a lawful and proper change in the plans by the road officials, and the landowners were aggrieved thereby to the extent of damage or injury, the Highway Commissioner might institute new condemnation proceedings, of his own volition, to ascertain increased damages on account of the change in the plans, indeed he might be compelled to do this by mandamus proceedings." 174 Va. page 92.

For the foregoing reasons, the writ of mandamus prayed for is refused, without prejudice to the right of the petitioners to take such other action as they may deem necessary in the premises.

*Writ refused.*