# Richmond

Elizabeth River Tunnel District, Et Al. v. Louise Beecher.

January 16, 1961.

Record No. 5147.

Present, Egglestom, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Edward L. Breeden, Jr. (Robert R. MacMillan; Breeden, Howard & MacMillan,* on brief), for the plaintiffs in error.

*Herbert K. Bangel (Bangel, Bangel & Bangel,* on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Plaintiff, Louise Beecher, filed a motion for judgment against Elizabeth River Tunnel District and Virginia Transit Company seeking damages for personal injuries sustained while she was in the act of boarding a bus allegedly operated and controlled by the defendants. The defendants filed a special plea praying that the suit be dismissed on the ground that the District and the Company, as its agent, were performing an essential governmental function in operating the buses and were thus immune from suit.

The court proceeded to hear evidence on the special plea and on September 5, 1959, entered the following order:

"It appearing to the Court for the reasons stated in its written opinion dated October 26, 1959, that the said special plea filed by the defendants should be denied and rejected, the Court doth hereby deny and reject said special plea and doth direct that the said defendants file their answers to said motion for judgment on or before November 4, 1959, to all of which action of the court the said defendants and each of them do here except and object."

Thereafter the defendants, without waiving their exceptions and without consenting to suit, filed their answers as directed in which they denied the allegation of negligence and asserted that the plaintiff was guilty of contributory negligence.

The trial of the case before a jury resulted in a verdict against the defendants in the sum of $10,000. Defendants thereupon moved the court to set aside the verdict as contrary to the law and the evidence, which motion the court denied and entered final judgment for the plaintiff. We granted defendants a writ of error.

The questions involved relate both to the matter of governmental immunity raised by the special plea, and the events surrounding the alleged accident.

The special plea asserted:

"1. The defendant, the Elizabeth River Tunnel Commission, is a governmental entity, a political subdivision and arm of the State of Virginia and is immuned from suit in this action and may not be sued except with consent of the State.

"2. The General Assembly of Virginia in creating the Elizabeth River Tunnel District found it to be a governmental entity, and specified that the 'project' could 'include bus facilities for the transportation of passengers through or over such tunnel or bridge if the Commission shall deem it expedient to acquire such facilities.'

"3. In the exercise of such discretion the Elizabeth River Tunnel Commission has deemed it expedient and mandatory to transport pedestrians over the project as the facility was not designed or constructed to enable pedestrians to walk through the tunnel portion of said project.

"4. In the exercise of its governmental function the Elizabeth River Tunnel Commission contracted with Virginia Transit Company to assist the Commission in operating said bus facility and in fulfilling its governmental function, but the control of and responsibility for said bus operation resides in said Elizabeth River Tunnel District, and the immunity afforded by law extends to the acts of the Virginia Transit Company.

"Wherefore the defendants move the court to dismiss the plaintiff's action and enter judgment for the defendants on their Special Plea."

The plaintiff filed no answer denying the allegations of the special plea and offered no evidence when said special plea was heard. On the other hand defendant, Elizabeth River Tunnel District, introduced evidence on the plea, developing the following facts:

The Elizabeth River Tunnel District is a political subdivision of the Commonwealth of Virginia and has been declared by the General Assembly to be created to perform an essential governmental function of the Commonwealth. Acts of Assembly 1942, Chapter 130. The Act creating the District provides that the Commission may construct a bridge and tunnel, or both, over and under the Elizabeth River between the cities of Norfolk and Portsmouth; the Act specifically provides that the bridge-tunnel project "may also include bus facilities for the transportation of passengers through and over such tunnel or bridge if the Commission shall deem it expedient to acquire such facilities." Acts of Assembly 1942, Chapter 130, Sec. 3(c).

Pursuant to said authority the Commission purchased twelve buses which were painted with distinctive colors, and established routes for said buses over the bridge-tunnel project with connecting bus routes in the cities of Norfolk and Portsmouth. It was established that no means existed by which pedestrians could cross said bridge-tunnel project except by the tunnel buses and that the buses are a necessary and incidental part of said project; that the schedules, routes, and fares applicable to said buses are subject to the final and absolute control of the Tunnel Commission.

The license plates used on said buses are "public use" tags issued by the State Department of Highways, and all gasoline, oil and parts used by the said tunnel buses are exempt from Federal and State taxation as said buses are State owned and used. When the buses were purchased by the Commission no Federal tax was paid thereon as they were held for use by the State.

The geographical area of the District includes the cities of Norfolk and Portsmouth and the County of Norfolk. The bus facilities are inter-urban only and not intra-urban. The buses carry passengers between a point in the City of Norfolk to a point in the City of Portsmouth and *vice versa*, but not between two points in the City of Norfolk or the City of Portsmouth, and signs at the bus stops advise the public of this fact. Rules issued by the Commission are posted and enforced by the Tunnel Commission. The Commission is composed of two representatives from the City of Norfolk, and one representative each from the City of Portsmouth and Norfolk County; the permanent chairman of the Commission is the Commissioner of Highways. The District has its own police force, and has the same power of condemnation as the State Highway Department.

Upon this evidence the trial court in its opinion overruling the special plea, in effect, held:

1. That the Elizabeth River Tunnel District has final and absolute control of all phases of the tunnel bus operation, and that the Virginia Transit Company is a mere agent of the Tunnel District and not an independent contractor.

2. That the Tunnel District in operating said buses along authorized routes, exercised its statutory powers and did not exceed the powers granted it by statute.

3. That it is settled law in this Commonwealth that the State cannot be sued for its torts or the torts of its agents except by the consent of the State, which consent has been granted only in the case of contractual obligations of the State. §§ 8-752 and 8-757, Code of Virginia, 1950.

4. That the foregoing rule in paragraph 3 above is judge-made and therefore subject to modification by the courts to meet changing conditions; that conditions having changed, it would deprive the Tunnel District of its governmental immunity on the theory that the bus operation is a "legal function" of the District but not a "governmental function."

5. That "no public agency of the State should be allowed to operate what amounts to a commercial undertaking for compensation and with the same rights as a private enterprise, without commensurate liabilities."

6. That the Elizabeth River Tunnel District Act (Acts of Assembly 1942, Chapter 130) provides that the District "may sue and be sued," and that the State has perhaps thereby consented to suit for the torts of its agents.

We do not agree with several of the lower court's conclusions, as hereinafter pointed out.

The Act creating the Tunnel District (Acts of Assembly 1942, Chapter 130, Sec. 16) provides:

"It is hereby found, determined and declared that the creation of the District and the carrying out of its corporate purposes is in all respects for the benefit of the people of this State and is a public purpose, and that the District and the Commission will be performing an essential governmental function in the exercise of the powers conferred by this Act."

This is a legislative declaration and not a judicial determination. The State cannot be sued for torts without its consent. This is

the settled law in Virginia and other jurisdictions. *Sayre* v. *Northwestern Turnpike Road*, 10 Leigh (37 Va.) 454; *Richmond* v. *Long's Adm'rs*, 17 Gratt. (58 Va.) 375; *Maia* v. *Eastern State Hospital*, 97 Va. 507, 34 S. E. 617; *Commonwealth* v. *Chilton Malting Co.*, 154 Va. 28, 152 S. E. 336; *Wilson* v. *State Highway Commissioner*, 174 Va. 82, 4 S. E. 2d 746; *Hicks* v. *Anderson*, 182 Va. 195, 28 S. E. 2d 629; *Eriksen* v. *Anderson*, 195 Va. 655, 79 S. E. 2d 597; *Banks* v. *Liverman*, 129 F. Supp. 743 (affirmed, 226 F. 2d 524); 49 Am. Jur., States, Territories and Dependencies, § 76, p. 288; 81 C.J.S., States, § 130, p. 1137.

Code, §§ 8-752 and 8-757 provide the only instances in which actions may be maintained against the State. There is no statute in Virginia granting a right to sue the State for torts. The power to consent to suit for torts rests in the legislature and not in the judiciary.

■ The fact that the Elizabeth River Tunnel District Act provides that it "may sue and be sued" cannot be advanced as an assertion of State waiver of immunity or State consent to suit for torts. We have consistently held that waiver of immunity cannot be implied from general statutory language or by implication. Statutory language granting consent to suit must be explicitly and expressly announced. *Maia* v. *Eastern State Hospital, supra*, 97 Va. at p. 512; *Wilson* v. *State Highway Commissioner, supra*, 174 Va., at p. 90; *Kellam* v. *School Board of the City of Norfolk*, 202 Va. 252, 117 S. E. 2d 96.

The language "sue and be sued," "plead and be impleaded," "contract and be contracted with," are words affording a procedural right only and do not constitute a waiver of immunity or a consent to suit.

■ The argument advanced by the plaintiff that the operation of said buses was a work of internal improvement prohibited by Section 185 of the Virginia Constitution was settled by our decision in *Almond* v. *Day*, 199 Va. 1, 10, 97 S. E. 2d 824, 831, where we held the State's operation of a shuttle bus service, similar to the service here involved, to be a necessary incident to a bridge-tunnel project and not prohibited by the Constitution of Virginia.

We hold that defendant, Elizabeth River Tunnel District, in operating the tunnel's shuttle bus service, was performing an essential governmental function (*Almond* v. *Day, supra*, 199 Va., at p. 10; *Richmond-Greyhound Lines* v. *Davis*, 200 Va. 147, 151, 104 S. E. 2d 813, 816), and was thus immune from any action predicated on tort liability.

We next consider the question as to whether the Virginia Transit Company was an agent of the Elizabeth River Tunnel District as contended by the defendants or whether it was an independent contractor as contended by the plaintiff.

It will be remembered that paragraph 4 of the special plea asserted:

"In the exercise of its governmental function the Elizabeth River Tunnel Commission contracted with Virginia Transit Company to assist the Commission in operating said bus facility and in fulfilling its governmental function, but the control of and responsibility for said bus operation resides in said Elizabeth River Tunnel District, and the immunity afforded by law extends to the acts of the Virginia Transit Company."

In the lower court's opinion heretofore referred to (paragraph 1) it was held that the Elizabeth River Tunnel District has final and absolute control of all phases of the tunnel bus operation, and that the Virginia Transit Company was a mere agent of the Tunnel District and not an independent contractor. With this we do not agree.

In the contract between the Commission and the Transit Company (Exhibit No. 1) it is agreed that the Transit Company had complete control over the maintenance of the buses furnished by the Tunnel Commission; also the repairs to the buses; cleaning and servicing them; accounting services; and supervising the operation of the buses, including the employment, training, dispatching, supervision and discipline of the operators.

The contract provides: "The Company agrees to furnish all bus operators required in connection with the rendering of the bus service herein contemplated, and all such operators shall be employees of the Company and not of the Commission."

The contract between the Tunnel District and the Transit Company also provides for the doing of specified work at a fixed minimum rate of $25,000 per year, plus 4½ per cent of the gross revenue from the operation of the buses. Under this contract the Transit Company was employed for the specific purpose of doing a particular job, to-wit, the hauling of passengers through and over the bridge-tunnel project.

All of these duties to be performed by the Transit Company show an individual control in it, differing from that of an employee-agent relationship, thus establishing the relationship of an independent contractor.

It is conceded by the defendants that the bus driver would be liable

for his negligence. This being so, in accord with our holding that the Transit Company is an independent contractor rather than an agent, the negligence of the bus driver would be attributable to the Transit Company and the canopy of immunity would not extend to it.

In *Epperson* v. *DeJarnette*, 164 Va. 482, 486, 180 S. E. 412, it is said:

" 'The law defined an independent contractor to be a person who is employed to do a piece of work without restriction as to the means to be employed, and who employs his own labor and undertakes to do the work according to his own ideas, or in accordance with plans furnished by the person for whom the work is done, to whom the owner looks only for results.' "

Under the contract the Virginia Transit Company not only had the right but the duty to control the work incident to the transportation of passengers. As said in *Craig* v. *Doyle*, 179 Va. 526, 531, 532, 19 S. E. 2d 675, 677:

"If under the contract the party for whom the work is being done may prescribe not only what the results should be, but also direct the means and methods by which the other shall do the work, the former is an employer, and the latter an employee. But if the former may specify the results only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employee, but an independent contractor. So the master test is the right to control the work. And it is this right which properly differentiates service from independent employment."

In *Ross* v. *Schneider*, 181 Va. 931, 939, 27 S. E. 2d 154, 157, we said:

"There are numerous criteria which have been said by the courts and the text writers to be important as tests in determining whether the relationship between parties engaged in a transaction, as we have here, is that of independent contractor or servant as applied to the party performing the service or doing the work. The presence of one or more of them is not necessarily conclusive of this status. The two of those which seem to be most relied upon, as we have indicated, is, first, in which party lies the control over the work and, second, is there present in the particular case the existence of a contract for the doing of certain work at a fixed price."

The reservation in the contract by the Tunnel Commission of the privilege of inspecting and supervising the work and making changes

in the means to be employed does not destroy or impair the character of independent contractor. *Bibb's Adm'r* v. *N. & W. R.R. Co.*, 87 Va. 711, 14 S. E. 163.

In view of the contractual arrangement between the Transit Company and the Tunnel District, we hold that the Transit Company was an independent contractor and the immunity which we hold applicable to the Tunnel District does not extend to the Transit Company. It is not necessary that we decide nor do we express any opinion as to whether such immunity would extend to the Transit Company were it the agent of the Tunnel District.

■ The defendants assigned three errors which pertain to the trial of the case. The evidence surrounding the accident is not set out in the brief filed by defendants and was scantily argued before us on appeal. The record simply shows that Mrs. Beecher was attempting to board a bus operated and controlled by the Transit Company. She had reached her arm up inside the bus in the act of boarding same, and while in this position the bus driver closed the door on her arm, started the bus and dragged her 10 feet or more along the street. She ultimately pulled her arm loose from the door and fell to the pavement. It is disclosed that Mrs. Beecher was painfully injured and was taken to the hospital. There is no contention that the verdict was excessive.

The jury was fully and properly instructed as to the law of the case. The only exception taken was to the court's instructing the jury that as a matter of law the plaintiff was not guilty of contributory negligence. This instruction was clearly proper as there was no semblance of contributory negligence shown.

■ The defendants next complain that "The court erred in not permitting the defendants to demonstrate to the jury the operation of the appliance that allegedly caused the plaintiff's injury." This relates to a suggestion by the attorney for the defendants that the jury be permitted to inspect one of the buses used in the operation, especially pertaining to the operation of the bus door. The jurors were asked if they cared to make such an inspection and answered in the negative.

The evidence introduced by the defendants at the trial clearly showed how the bus door operated and it was apparent that the conditions surrounding the requested demonstration would not be the same as the conditions existing as the time of the accident. The ruling in this instance rested in the discretion of the trial court

and we hold that the court did not abuse its discretion in this regard. See 60 A. L. R. 574, and cases there cited.

The defendants next say "The court erred in excluding defendants' expert medical witness from the courtroom while plaintiff's medical witness was testifying." We see no merit in this assignment. The question of whether or not an expert witness will be permitted to remain in the courtroom during the testimony of an expert called by an adversary rests in the sound discretion of the trial court. While in most instances trial courts properly permit medical experts to remain in the courtroom on the ground that medical witnesses do not come within the rule requiring the separation of witnesses on proper motion, it is only when there is an abuse of discretion that such would be reversible error. Here such an abuse of discretion was not shown. *Leache* v. *State*, 22 Tex. App. 279, 3 S. W. 539, 541.

For the reasons stated the judgment is affirmed as to the Virginia Transit Company and reversed as to the Elizabeth River Tunnel District.

*Affirmed in part; and reversed in part.*