## CIRCUIT COURT OF SMYTH COUNTY

Courtney Cochrane

v.

Commonwealth of Virginia

August 4, 1987

By JUDGE CHARLES H. SMITH, JR.

The court has reviewed the entire file in this matter including previous motions, orders and memoranda. This opinion will dispose of the only remaining motion and that is the defendant's claim that the doctrine of sovereign immunity should apply and deprive this court of subject matter jurisdiction.

The facts of the case are fairly simple. The plaintiff sues for damages allegedly sustained due to the negligence of the defendant in the "maintenance" of I-81 at a point approximately one mile north of Chilhowie in the north bound lane. The plaintiff was traveling on the interstate at this location on April 5, 1984, when his vehicle was struck by a large boulder which apparently rolled off a slope adjacent to the highway. The plaintiff allegedly sustained property damage and personal injuries as a result of this collision.

The plaintiff contends that his claim falls squarely within the provision of the Virginia Tort Claims Act. (Section 8.01-195.1 *et seq.* of the Code) The defendant, while conceding that the Act partially erodes the common law doctrine of sovereign immunity, nevertheless, contends that this claim is excluded from the coverage of the Act insofar as it relates to the original location, plan or design of the highway. The real issue presented then, is whether the suit can proceed on the theory of negligent maintenance by the sovereign under the Tort Claims Act

or whether it is barred as being one for negligence in original plan, construction or design of the highway.

The interstate is a state highway facility, owned by the Commonwealth of Virginia and operated through the State Department of Highways and Transportation. (Section 33.1-48 of the Code) The State Highway and Transportation Commissioner has the power to "do all acts necessary or convenient for the constructing, improving and maintaining the roads embraced in the system of state highways and to promote the interests of the Commonwealth in the area of public transportation." (Section 33.1-13 of the Code)

As both counsel have quite aptly and ably pointed out, the ancient doctrine of sovereign immunity derives from the monarchial tenet that "the king can do no wrong."

> In modern times, it is more often explained as a rule of social policy, which protects the state from burdensome interference with the performance of its governmental function and preserves its control over the state funds, property and instrumentalities. The public service might be hindered and the public safety endangered if the supreme authority could be subjected to suit at the instance of every citizen, and consequently controlled in the use and disposition of the means required for the proper administration of the government. (72 Am. Jur. 2d, *States, Territories and Dependencies*, sect. 99.)

The size and complexity of modern state governments has mandated a relaxation of the strict rule of sovereign immunity. As the court stated in *James v. Jane*, 221 Va. 43 (1980):

> The Commonwealth of Virginia functions only through its elected and appointed officials and employees. If because of the threat of litigation, or for any other reason, they cannot act, or refuse to act, the state also ceases to act. Although a valid reason exists for state employee immunity, the argument for such

immunity does not have the same strength it had in past years. This is because of the intrusion of government into areas formerly private, and because of the thousand-fold increase in the number of government employees.

Virginia, like most states, conscious of the vastness and complexity of state government and conscious of the growing exposure to liability attendant thereto, has seen fit to shed the cloak of immunity in a limited class of cases with the recent adoption of the Virginia Tort Claims Act.

The Supreme Court of Virginia said in *Elizabeth River Tunnel District v. Beecher*, 202 Va. 452 (1961):

> waiver of immunity cannot be implied from general statutory language or by implication. Statutory language granting consent to suit must be explicitly and expressly assumed.

Section 8.01-195.3 of the Virginia Tort Claims Act explicitly excludes:

> (2) Any claim based upon an act or omission of the General Assembly. . . or to the legislative function of any agency subject to the provisions of this article.

As a general rule, a public authority in deciding whether or not to build a road, when and where to build it, and its general plan and design acts in a legislative or quasi-judicial capacity. For such discretionary acts in its legislative capacity, there has historically been no attendant liability and the General Assembly would appear to have preserved this immunity by the above exclusion.

> The defendant was empowered by its Charter to lay off streets and walks, and improve the same, but it was wholly within its discretion when and where it would do so. For the omission to exercise the power, it being legislative and discretionary, it would not be liable for

any injury occurring in consequence of the omission although when the power was exercised, the duty to keep the streets and sidewalks in a reasonably safe condition for travel would become a ministerial and positive duty, for the neglect whereof it would be liable for an injury resulting therefrom. 2 Dillon Mun. Corp. (4th Ed.) sections 949 and 1048. *Jones' Administrator v. City of Richmond*, 118 Va. 612.

In adopting a plan for the improvement or repair of its streets or highways a public authority acts in a quasi-judicial or legislative capacity, and as a general rule will not be liable for consequential damages to individuals who are injured in their persons or property by reason of errors or defects in plan adopted, even though reasonable men might differ as to which plan should have been adopted. The public authority will not be held liable merely because in the opinion of a jury a safer or better plan might have been adopted or because in their opinion it chose the less safe of two plans. 39 Am. Jur. 2d, *Highways, Streets and Bridges*, section 353.

The defendant, in its memorandum, cites two cases, one from Texas, *Standard v. State Department of Highways, etc.*, 635 S.W.2d 581 (1982), and one from New York, *Stuart-Bullock v. State*, 326 N.Y.S.2d 909 (1971), in support of its claim of immunity in this case due to exercise of a discretionary function. Both cases involved damages allegedly sustained due to negligent failure to construct curbs or guard rails. Both states have, by statute or otherwise, shed the cloak of sovereign immunity in such cases. The court ruled for the defendant in each case on the theory that liability attaches to negligent maintenance and repairs and not to negligent construction or design. In the Texas case the court defined maintenance as follows "to hold or keep in any particular state of efficiency. . . to keep up, not to suffer, to fail or decline." Section 33.1-23.02 of the Code defines maintenance as follows:

the term "maintenance" shall include ordinary maintenance, maintenance replacement, and any other categories of maintenance which may be designated by the Commissioner.

The court is of the opinion that the language of the Virginia Tort Claims Act evinces an intent by the General Assembly to preserve unto the Commonwealth and its agencies immunity from suits for acts discretionary in nature. Decisions concerning the slope of a bank, the width of a shoulder or the building of a "rock" fence are decisions of design, plan or construction and not maintenance. As such they fall within the legislative function of the defendant, are discretionary in nature, and are thus excluded from the Act. The court would, therefore, grant defendant's motion insofar as it pertains to the introduction of evidence regarding same.

The plaintiff further contends that the defendant undertook major repairs in the area of the accident some six days before the accident. He contends that the defendant negligently removed supporting soil and rock which proximately caused the accident. The court is of the opinion that such maintenance operations fall within the purview of the Act and are clearly cognizable by the court. I believe this issue is really conceded by the defendant in its Reply Memorandum.