Elizabeth M. HIGGINS, M.D., Janice Roman, M.D., Plaintiffs,

v.

MEDICAL COLLEGE OF HAMPTON ROADS, Eastern Virginia Medical School, Anas M. El–Mahdi, Edward Brickell, James E. Etheridge, Defendants.

Civ. A. No. 2:93cv1037.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 28, 1994.

K. Reed Mayo, Hunton & Williams, Norfolk, VA, Jeffrey M. Cross, Mary C. Bonaccorsi, Ross & Hardies, Chicago, IL, for plaintiffs.

Anthony F. Troy, John K. Burke, Jr., Mays & Valentine, Richmond, VA, David K. Sutelan, John W. Brown, P.C., Chesapeake, VA, for defendants.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

Defendants Medical College of Hampton Roads ("Medical College"), Eastern Virginia Medical School ("EVMS"), Anas M. El–Mahdi ("El–Mahdi"), Edward Brickell ("Brickell"), and James E. Etheridge ("Etheridge") (collectively "the Defendants"), filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. By Order dated December 13, 1993, the Court designated Magistrate Judge William T. Prince to conduct a hearing and to submit his Report

and Recommendation for disposition of Defendants' motion pursuant to Rule 72 of the Rules of Civil Procedure and 28 U.S.C. § 636(b). The magistrate judge's Report and Recommendation was filed with this Court on February 17, 1994. The Plaintiffs and Defendants both submitted objections to the magistrate judge's Report and Recommendation and a hearing was held on April 11, 1994. For the reasons stated below, the Court (1) DENIES Defendants' motion to dismiss Counts I and II for lack of standing and GRANTS Defendants' motion to dismiss Count III for lack of standing; (2) DENIES Defendants' motion to dismiss the Medical College under Eleventh Amendment immunity; (3) DENIES Defendants' motion to dismiss Counts I and II because of Plaintiffs' unclean hands; (4) DENIES Defendants' motion to dismiss Count I for insufficient allegation of facts; (5) DENIES Defendants' motion to dismiss Count II for insufficient allegation of facts; (6) GRANTS Defendants' motion to dismiss Count III as to the Medical College and EVMS; and (7) GRANTS the Defendants' motion to dismiss EVMS from all claims.

## I. BACKGROUND

### A. Factual Background

Construing the allegations in the complaint in the light most favorable to the Plaintiffs who are the non-moving parties, the facts in this case are as follows. Plaintiffs Dr. Elizabeth Higgins, M.D., ("Dr. Higgins"), and Dr. Janice Roman, M.D., (Dr. Roman") (collectively "the Plaintiffs") are board certified in radiation oncology. Dr. Higgins and Dr. Roman were faculty members at EVMS and part of the Department of Radiation Oncology and Biophysics at EVMS until June, 1993. Sometime in 1983 or 1984, the Department of Radiation Oncology at EVMS and Maryview Medical Center ("Maryview") entered into an agreement under which the faculty of EVMS would provide exclusive radiation oncology services to patients at Maryview. In 1985, Dr. Higgins was assigned by the Chairman of the Department of Radiation Oncology at EVMS to provide radiation oncology services at Maryview on Mondays and Thursdays as well as assignments at other hospitals. In 1989, Dr. Roman was assigned by the Chairman of the Department of Radiation Oncology at EVMS to provide radiation oncology services at Maryview on Tuesdays, Wednesdays and Fridays as well as assignments at other hospitals.

During the period of June 1992 until November 1992, the Plaintiffs became concerned about coverage issues at Maryview and the impact of such issues on patient care at Maryview. In November 1992, Dr. Higgins met with the Maryview administration to discuss the possibility of her and Dr. Roman devoting their entire energies to Maryview and resigning from EVMS. In December 1992, the Plaintiffs met with Maryview administration to further discuss a full-time arrangement at Maryview. At this December meeting, Maryview's president, Mr. Herbek, agreed to present to Maryview's Board of Directors the plan that the Plaintiffs would contract to become full-time radiation oncologists at Maryview. On January 8, 1993, the Plaintiffs again met with the administration at Maryview and they were informed that Maryview's administration and Board of Directors had approved the plan to allow the Plaintiffs to become full-time radiation oncologists at Maryview. Also at this meeting, the Plaintiffs and Maryview agreed that Maryview would notify the Medical College and EVMS of its intention not to renew its exclusive contract for radiation oncology services. The Plaintiffs would also inform the Medical College and EVMS of their decision to separate from the Medical College and EVMS effective June 30, 1993.

Upon being informed of the agreement between Dr. Higgins, Dr. Roman and Maryview, Plaintiffs allege the Defendants approached the Maryview administration and intentionally and wrongfully threatened to completely disaffiliate themselves from Maryview if Maryview proceeded to contract with the Plaintiffs for full-time radiation oncology services. On January 25 and 26, 1993, Dr. Higgins and Dr. Roman met with defendants Etheridge (the Dean of the Medical College and EVMS) and Brickell (the President of the Medical College and EVMS). At these meetings, Plaintiffs allege Etheridge and Brickell said that the Medical College

and EVMS could not allow Plaintiffs to disaffiliate from the Defendants and contract to provide full-time radiation oncology services at Maryview. Plaintiffs also allege that Etheridge and Brickell further informed them that they "would do what they had to do" to make sure these things did not occur.

On March 10, 1993, the Maryview administration met with defendants Etheridge and Brickell and informed them that they did not plan to renew the exclusive contract between Maryview and the Medical College and EVMS. On the same day, the Vice–President of Operations at Maryview informed the Plaintiffs of Maryview's willingness to contract with them for full-time radiation oncology services at Maryview.

On March 30, 1993, after being informed by Maryview that there was a problem with respect to the proposed contract, the Plaintiffs met with Etheridge and Maryview's Vice–President of Operations to discuss working in an open (non-exclusive) department at Maryview. On April 23, 1993, Maryview administrators met with Etheridge, Brickell and El–Mahdi as well as Dr. Kuban of the Medical College and EVMS. At this meeting, Maryview administrators were allegedly told that Defendants would not accept an open department at Maryview.

The Board of Directors at Maryview met on April 26, 1993, and voted to renew their exclusive contract for radiation oncology services with the Medical College and EVMS. On April 27, 1993, Maryview's president informed the Plaintiffs in writing of Maryview's decision to continue its exclusive contract for radiation oncology services with the Medical College and EVMS.

## B. Procedural History

On October 21, 1993, Plaintiffs filed their complaint which contains three counts. Count I alleges a conspiracy to restrain trade in violation of § 1 of the Sherman Act against EVMS and the Medical College. Count II alleges monopolization in violation of § 2 of the Sherman Act against EVMS and the Medical College. Finally, Count III, which is based on Virginia law, alleges tortious interference with prospective business relations against EVMS, the Medical College,

and El–Mahdi, Brickell and Etheridge individually. As part of their prayer for relief, plaintiffs seek: (1) that the Medical College and EVMS be adjudged in violation of Sherman Act §§ 1 and 2; (2) that the Medical College and EVMS be adjudged to have tortiously interfered with the prospective business relationship between the Plaintiffs and Maryview; (3) that the Medical College and EVMS be enjoined from providing radiation oncology services to Maryview; and (4) damages from the Defendants for the tortious interference.

Defendants moved on November 15, 1993, to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They moved to dismiss on the following grounds:

(A) Plaintiffs have failed to state a claim upon which relief can be granted because it is apparent from the allegations of the Complaint that plaintiffs have suffered no legally compensable injury traceable to the Defendants' conduct and Plaintiffs therefore lack standing;

(B) Because the Medical College is "an arm of the State" entitled to immunity under the Eleventh Amendment of the United States Constitution, the Plaintiffs cannot sue the Medical College in federal court, and this Court must, therefore, dismiss the Complaint;

(C) Plaintiffs have failed to state a claim for injunctive relief under the antitrust laws because the allegations in the Complaint clearly establish that Plaintiffs are coming to this Court with "unclean hands;"

(D) The Plaintiffs have failed to state a claim under Section 1 of the Sherman Act (Count I) because they have failed to allege sufficient facts to show that the Defendants' exclusive contract with Maryview constitutes an unreasonable restraint of trade;

(E) The Plaintiffs have failed to state a claim under Section 2 of the Sherman Act (Count II) because they have failed to allege sufficient facts to establish that the Defendants possess sufficient market share to constitute monopoly power;

(F) Because the Medical College is immune from tort actions as a public instrumentality of the Commonwealth of Virginia, the Plaintiffs have failed to state a claim against the Medical College in Count III for tortious interference with prospective business relations; and

(G) Because the Medical College lacks capacity to be sued under Virginia law, this Court should dismiss all of Plaintiffs claims against it.

Plaintiffs filed their memorandum in opposition to the Defendants' motion to dismiss on November 29, 1993. Defendants then filed their rebuttal brief on December 3, 1993. Finally, Plaintiffs filed their surreply to the Defendants' rebuttal brief on December 13, 1993.

Magistrate Judge Prince held a hearing on December 15, 1993, and filed his Report and Recommendation on February 17, 1994. As to each ground raised by the Defendants, the Report & Recommendation recommended as follows:

(1) Grant the Defendants' motion to dismiss Count III because the Plaintiffs' conduct in discussing a possible contract for radiation oncology services with Maryview administrators was disloyal as a matter of law. This disloyalty denies the Plaintiffs standing to bring their tortious interference claim. Deny the Defendants' motion to dismiss Counts I and II for lack of standing;

(2) deny the Defendants' motion to dismiss the counts against the Medical College on the basis of Eleventh Amendment immunity;

(3) deny the Defendants' motion to dismiss Counts I and II by reason of Plaintiffs' unclean hands;

(4) deny the Defendants' motion to dismiss Count I for failure to allege sufficient facts to show that the defendants' exclusive contract with Maryview constitutes an unreasonable restraint of trade;

(5) deny the Defendants' motion to dismiss Count II for failure to allege sufficient facts to establish that the Defendants possess sufficient market share to constitute monopoly power;

(6) grant the Defendants' motion to dismiss Count III as to the Medical College and EVMS by reason of sovereign immunity; and

(7) grant the Defendants' motion to dismiss EVMS from all claims because EVMS lacks capacity to be sued.

Defendants filed their objections to the Report and Recommendation on March 2, 1994 and Plaintiffs responded on March 16, 1994. Plaintiffs submitted their objections to the Report and Recommendation on March 2, 1994 and Defendants responded on March 14, 1994. The Court held a hearing on these objections on April 11, 1994.

## II. STANDARD OF REVIEW/DISMISSAL

In considering the Report and Recommendation of the magistrate judge, the Court is required to make a *de novo* determination of those portions to which objection is made. 28 U.S.C. § 636(b)(1). As to any portion of the Report and Recommendation, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations which were made by the magistrate judge. *Id.*

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is construed in the light most favorable to the plaintiffs and their allegations are taken as true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Bruce v. Riddle*, 631 F.2d 272, 273–74 (4th Cir.1980). A court should not dismiss a complaint even if it appears on the face of the pleadings that the chance of recovery is very remote. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686.

## III. ANALYSIS

### A. Plaintiffs Lack Standing

Defendants have consistently taken the position that the Plaintiffs were disloyal by

participating in negotiations with Maryview administrators. Furthermore, they argue this disloyalty prevented Plaintiffs from entering into an enforceable contract with Maryview to provide radiation oncology services at Maryview independent of EVMS. The Defendants contend that since Plaintiffs could not have entered into a valid enforceable contract, they have not suffered an injury traceable to the Defendants alleged conduct. Therefore, Defendants argue the Plaintiffs lack standing to bring their claims as alleged in the Complaint. Plaintiffs, on the other hand, argue that standing refers only to the jurisdictional threshold as required under Article III of the Constitution.

 The Court concurs with the Report and Recommendation and holds that the Plaintiffs' actions were disloyal as a matter of law. Specifically, the Court relies on *Community Counselling Service, Inc. v. Reilly*, 317 F.2d 239 (4th Cir.1963). In that case, the court ruled a salesman employee was disloyal for securing future clients prior to his resignation from his current employer.

 In their objections to the Report and Recommendation, Plaintiffs disagreed with the finding that they were disloyal as a matter of law and requested the Court to remand the matter to the magistrate judge to reconsider his finding in light of deposition testimony taken since the hearing before the magistrate. Plaintiffs contend that this testimony will reveal that Maryview administrators, and not the Plaintiffs, first suggested the idea that Plaintiffs should begin providing radiation oncology services on a full-time basis independent of the Medical College and EVMS. The Court declines to do this for two reasons. First, in a motion to dismiss for failure to state a claim upon which relief can be granted, the Court makes its rulings based solely on the pleadings. Secondly, even if the Court were to consider the deposition testimony, the Court concludes that "who approached whom" is irrelevant in determining whether Plaintiffs breached their duty of loyalty to the Medical College and EVMS. In *Community Counselling Service,* the Fourth Circuit stated:

> [u]ntil the employment relationship is finally severed however, the employee must prefer the interests of his employer to his own. During such a period, he cannot solicit for himself future business which his employment requires him to solicit for his employer. If prospective customers undertake the opening of negotiations which the employee could not initiate, he must decline to participate in them. Above all, he should be candid with his employer and should withhold no information which would be useful to the employer in the protection and promotion of its interests.

*Id.* at 244. Thus, Plaintiffs breached their duty of loyalty by merely participating in negotiations with Maryview administrators, even if they did not initiate these negotiations. Plaintiffs' own Complaint, in paragraphs 30–33, alleges that they participated in negotiations with Maryview administrators on at least three different occasions prior to notifying the Defendants of their decision to separate from the Medical College and EVMS effective June 30, 1993.

Having concluded that Plaintiffs breached their duty of loyalty, the Court will analyze the effect of this breach with respect to Plaintiffs' standing to bring their claims. In *McKinney v. United States Dept. of Treasury*, 799 F.2d 1544 (Fed.Cir.1986), the court held:

> [t]he principal limitation imposed by Article III is that a litigant seeking to invoke the court's authority must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." In addition, Article III requires the litigant to establish that there is a causal connection between the litigant's injury and the putatively illegal conduct of the defendant, and that this injury is likely to be redressed should the court grant the relief requested.

*Id.* at 1549–50 (citations omitted). The Plaintiffs must meet this two prong test for each count alleged in order to have standing.

**1. Count III**

 Count III alleges that Defendants tortiously interfered with a prospective business relation between the Plaintiffs and Maryview. The elements for a prima facie showing of this state claim are:

(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985) (citation omitted). The Court agrees with the magistrate judge that the Plaintiffs' breach of their duty of loyalty precluded them from entering into a valid contractual relationship. At oral argument on the objections to the Report and Recommendation, counsel for Plaintiffs argued that "valid business expectancy" was a term of art meaning that any business expectancy was valid provided it was not illegal. The Court is not aware of any authority and was provided with no authority to support such an argument. Therefore, the Court concludes that since Plaintiffs could not show the existence of a valid contractual relationship or business expectancy, they would be unable to show an actual or threatened injury as required under the two prong test for standing. Since Plaintiffs do not have standing to bring Count III, the Defendants' motion to dismiss Count III is GRANTED.[1]

## 2. Counts I and II

■ Counts I and II claim that Defendants violated §§ 1 and 2 of the Sherman Act.[2] Plaintiffs allege that the exclusive contract between Maryview and the Medical College and EVMS unreasonably restrains competition in the relevant product and geographic markets in violation of Sherman Act § 1 and gives the Defendants monopoly power in the relevant markets in violation of Sherman Act § 2. The Court concludes that Plaintiffs have met the two prong standing test by alleging sufficient injury traceable to Defendants' conduct and that this injury can be remedied by a decision in the Plaintiffs' favor.

The Court distinguishes its finding of injury on Counts I and II from its finding of no injury with respect to Count III. With respect to Count III, the alleged improper interference and threats of disaffiliation by Defendants occurred while Plaintiffs were still affiliated with the Medical College and EVMS. Therefore, the Plaintiffs breach of loyalty is relevant and prevents them from having a valid business expectancy and denies them standing to bring Count III. However, with respect to Counts I and II, the Defendants alleged improper conduct is

1. While Count III has been dismissed as to all Defendants, Defendants have also argued that the Medical College is immune from the tort liability in Count III because it is a public instrumentality of the Commonwealth of Virginia. Were the Court to decide this issue, it would follow the reasoning of the Virginia Supreme Court in *Elizabeth River Tunnel District v. Beecher*, 202 Va. 452, 117 S.E.2d 685 (1961).

According to the Virginia General Assembly, "[t]he Medical College shall be deemed to be a *public instrumentality, exercising public and essential governmental functions to provide for the public health and welfare.*" 1987 Va.Acts Ch. 329, § 3. Furthermore, the Medical College, among other educational entities, is declared to be a "public bod[y] and constituted as a governmental instrumentalit[y] for the dissemination of education." Va.Code § 23–14. The Court therefore agrees with the magistrate judge's finding that the Medical College and EVMS are entitled to sovereign immunity. Were it necessary to rule on this ground the Court would GRANT Defendants' motion to dismiss Count III as to the Medical College and EVMS.

2. Sherman Act § 1 provides:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.
15 U.S.C. § 1 (Supp.1994).
Sherman Act § 2 provides:
Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.
15 U.S.C. § 2 (Supp.1994).

the exclusive contract which Plaintiffs alleged caused them injury while they were affiliated with the Medical College and EVMS and continued to cause them injury after they left the Medical College and EVMS. Since the injury continued even after Plaintiffs disaffiliated themselves, their breach of loyalty is not determinative on the issue of whether they have suffered injury traceable to Defendants alleged conduct. Thus, the Court concurs with the magistrate judge's recommendation that the Plaintiffs have alleged sufficient antitrust injury. Therefore, the Court DENIES the Defendant's motion to dismiss Counts I and II.

## B. Eleventh Amendment Immunity

■ The Medical College argues that it is an "arm of the state" and therefore should be entitled to immunity from suit in the federal courts under the Eleventh Amendment.[3] In *York v. Jones*, 717 F.Supp. 421, 429 (E.D.Va. 1989), this Court held that the Medical College of Hampton Roads "is not an arm of the Commonwealth entitled to eleventh amendment immunity." Therefore, the Court concurs with the magistrate judge's Report and Recommendation and DENIES the Medical College's motion to dismiss on these grounds.

## C. The Antitrust Laws and the "Unclean Hands" Defense

Among their relief requested, Plaintiffs are seeking to enjoin Defendants from providing radiation oncology services at Maryview. Defendants contend that Plaintiffs are precluded from seeking such equitable relief. According to Defendants, the Plaintiffs have "unclean hands" because of their breach of their duty of loyalty. Therefore, Defendants argue injunctive relief is unavailable to Plain-

tiffs under the Clayton Act § 16, 15 U.S.C. § 26.[4]

■ The Court rejects Defendants' position and relies primarily on *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968) *(overruled on other grounds by Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777, 104 S.Ct. 2731, 2744, 81 L.Ed.2d 628 (1984))[5] and *Chrysler Corp. v. General Motors Corp.*, 596 F.Supp. 416 (D.C.D.C.1984). The Supreme Court in *Perma Life* refused to allow the defense of *in pari delicto* in a treble damages antitrust action. According to the Court, "[t]here is nothing in the language of the antitrust acts which indicates that Congress wanted to make the common-law *in pari delicto* doctrine a defense to treble-damage actions." 392 U.S. at 138, 88 S.Ct. at 1984. The Court further based its decision on policy considerations. As the Court noted:

> [t]he plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition. A more fastidious regard for the relative moral worth of the parties would only result in seriously undermining the usefulness of the private action as a bulwark of antitrust enforcement.

*Id.* at 139, 88 S.Ct. at 1984. Therefore, the court held that "the doctrine of *in pari delicto*, with its complex scope, contents, and effects, is not to be recognized as a defense to an antitrust action." *Id.* at 140, 88 S.Ct. at 1985.

Defendants had argued that *Perma Life* does not apply to this case since it involved a treble damages action and Plaintiffs here are

---

**3.** The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. amend. XI.

**4.** Clayton Act § 16 provides:

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened

loss or damage by a violation of the antitrust laws, ... when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings....
15 U.S.C. § 26 (Supp.1994).

**5.** The *Copperweld* case overruled *Perma Life* only to the extent that a parent and a subsidiary were held capable of violating Section 1 of the Sherman Act. Therefore, the Court continues to rely on the *Perma Life* decision on all other grounds.

seeking an injunction. Although the *Perma Life* decision applied only to treble damage actions, this Court is persuaded by the reasoning of the United States District Court of the District of Columbia in *Chrysler Corporation v. General Motors Corporation,* 596 F.Supp. 416 (D.C.D.C.1984). In that case, the court addressed the issue of whether the "unclean hands" defense remains viable under § 16 of the Clayton Act. The Court noted that "[p]rivate parties filing suit under the antitrust laws function as 'private attorneys general' representing the public interest." *Id.* at 419 (citation omitted). Based on these policy considerations the court held that the "unclean hands" defense does not bar plaintiffs' claims when plaintiffs are seeking injunctive relief as well as treble damages. According to the court:

> courts considering actions under the antitrust laws must be concerned with protection of the public interest as well as redressing private injury. The claim that the plaintiff has himself violated the law cannot be allowed to overshadow plaintiff's cause of action and the potential vindication of the public interest. This is especially true in equity actions because "Courts of equity may ... go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." As is the case with actions at law, actions in equity must yield to the overall public policy of enforcing antitrust laws.

*Id.* (citations omitted).

In their objections to the Report and Recommendation, the Defendants argue that the Supreme Court has never decided whether the "unclean hands" defense is a valid defense to an action for injunctive relief under § 16 of the Clayton Act. Furthermore, they say the decisions of the lower courts denying the "unclean hands" defense in such actions are contrary to the language of the statute. This Court is unconvinced by Defendants' argument and adheres to the reasoning of the court in *Chrysler.*

Defendants also cite the case of *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), for the proposition that the *in pari delicto* defense remains a valid defense even after *Perma Life.* Although *Pinter* involved § 12(1) of the Securities Act of 1933, it does cite *Perma Life* and recognizes that five justices in *Perma Life* wrote that "a narrow, more traditional formulation [of *in pari delicto* ] should be available in private actions under the antitrust laws." *Id.* at 632, 108 S.Ct. at 2070. The Court is not persuaded that this means the "unclean hands" defense should apply in this case. Significantly, the Court notes that while further evaluating the Securities Act claim, the *Pinter* court said, "[u]nder the second prong of the ... test, a plaintiff's recovery may be barred only if preclusion of suit does not offend the underlying statutory policies." *Id.* at 637–38, 108 S.Ct. at 2073–74. Thus, cases cited by the Defendant recognize that policy considerations such as those outlined above may prevent the court from applying equitable defenses. The Court therefore concludes that it is in the public's best interest to continue to encourage private parties such as Plaintiffs in this case to enforce the antitrust laws and thereby promote competition in the market for radiation oncology services. Therefore, the Court DENIES the Defendants' motion to dismiss Plaintiffs' Counts I and II because of Plaintiffs' unclean hands.

**D. Sufficiency of Facts Alleged for Count I**

Defendants have argued that Count I should be dismissed because Plaintiffs have failed to allege sufficient facts to show that Defendants' exclusive contract with Maryview constitutes an unreasonable restraint of trade. The Fourth Circuit has held:

> [i]n assessing a dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a court must accept the allegations of the plaintiff's complaint as true. Dismissal is not warranted "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim." In antitrust cases in particular, the Supreme Court has stated that "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly."

*Advanced Health–Care Serv. v. Radford Com. Hosp.*, 910 F.2d 139, 143–44 (4th Cir. 1990) (citations and footnote omitted).

■ Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. To prove their Sherman Act § 1 claim, Plaintiffs must show, "(1) that the conspiracy produced adverse anticompetitive effects within the relevant product and geographic market; (2) that the objects and conduct pursuant to the conspiracy were illegal; and (3) that the plaintiff was injured as a proximate result of the conspiracy." *Advanced Health–Care Serv.*, 910 F.2d at 144. In order to survive a motion to dismiss, Plaintiff need only state a colorable set of facts, which, if proven, would entitle him to relief. *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir.1982). Plaintiffs have alleged that the exclusive contract between Medical College and EVMS and Maryview produced anticompetitive effects and injured the Plaintiffs by preventing them from entering the market for providing radiation oncology services. (See Complaint Paragraphs 16–22 and 45–46). As the magistrate judge stated, Plaintiffs are entitled to an opportunity to prove that, under these circumstances, the exclusive contract between Defendants and Maryview constituted an unreasonable restraint of trade. As the Fourth Circuit held in *Advanced Health–Care Services*, 910 F.2d at 145, "[a]t this point, the plaintiffs allegations of adverse effects on competition must be accepted as true, and the defendants' pro-competitive justifications considered unproven. Until some discovery is completed, there is no record upon which to assess the reasonableness of the restraints alleged by the plaintiff...." The Court therefore DENIES the Defendants' motion to dismiss Count I for insufficiency of alleged facts and will allow discovery to be conducted before the reasonableness of the Defendants' arrangement can be determined.

## E. Sufficiency of Facts Alleged for Count II

■ Defendants contend that Count II should be dismissed because Plaintiffs have failed to allege sufficient facts to establish that Defendants possessed sufficient market share to possess monopoly power and that Plaintiffs have therefore failed to state a claim under § 2 of the Sherman Act. Plaintiffs bringing a Sherman Act § 2 claim must show "possession of monopoly power in a relevant market, willful acquisition or maintenance of that power in an exclusionary manner, and causal antitrust injury." *Advanced Health–Care Serv.*, 910 F.2d at 147. Defendants position is that since they control only three of the six hospitals that provide radiation oncology services in the relevant geographic market, they therefore control only 50% of the relevant market. Under *White Bag Co. v. International Paper Co.*, 579 F.2d 1384 (4th Cir.1974), the Defendants argue that since they do not have a minimum of 70% of the relevant market, they cannot be found to have monopoly power. Defendants are incorrect however, in concluding that control of three hospitals translates into a 50% market share. In paragraphs 49–50 of the Complaint, Plaintiffs have sufficiently alleged that Defendants possess monopoly power. In order for Plaintiffs to quantify the precise measure of market power Defendants possess, they will need to perform detailed market analysis only after sufficient discovery. Therefore, the Court DENIES the Defendants' motion to dismiss Count II for failing to allege sufficient facts.

## F. Capacity of EVMS to be Sued

■ In *Davis v. Portsmouth*, 579 F.Supp. 1205, 1210 (E.D.Va.1983), *aff'd*, 742 F.2d 1448 (4th Cir.1984), this Court held that under Virginia law, an operating division of a governmental entity is not a proper party unless the legislature has vested the operating division with the capacity to be sued. The magistrate judge found that EVMS has no existence separate and apart from the Medical College and therefore lacks capacity to be sued under Virginia law. Significantly, the magistrate judge noted that neither party presented any authority on the issue of whether EVMS has the capacity to sue or be sued independently of the Medical College. Neither party has objected to the magistrate judge's finding on this issue. The Court

therefore adopts the magistrate judge's recommendation and GRANTS the Defendants' motion to dismiss EVMS from all claims.

### IV. CONCLUSION

For these reasons, the Court agrees with the magistrate judge's report and recommendation. Therefore, Defendants' motion to dismiss is GRANTED with respect to: dismissing Count III as to all Defendants because of Plaintiffs' lack of standing; and dismissing EVMS from all claims. Defendants' motion to dismiss is DENIED with respect to: dismissing Counts I and II because Plaintiffs lack standing; dismissing the Medical College under a theory of Eleventh Amendment immunity; dismissing Counts I and II because of Plaintiffs' "unclean hands; and dismissing Counts I and II for Plaintiffs' failure to allege sufficient facts.

Therefore, the Court directs that the state law claim for tortious interference in Count III be dismissed. The Court further directs that Eastern Virginia Medical School be dismissed from all remaining Counts.

The clerk shall mail a copy of this Memorandum Opinion and Order to counsel for all parties.

**IT IS SO ORDERED.**