COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:    Judges Beales, Friedman and Callins
Argued by videoconference


RACHEL VIRK

                                                        OPINION BY
v.        Record No. 1903-22-4            JUDGE DOMINIQUE A. CALLINS
                                                     AUGUST 13, 2024
GARY L. CLEMENS, ET AL.


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Joanne F. Alper, Judge Designate

Thomas K. Plofchan, Jr. (Jacqueline A. Kramer; Westlake Legal
Group, PLLC, on brief), for appellant.

Alexander Francuzenko (Philip C. Krone; Cook Craig &
Francuzenko, PLLC, on brief), for appellees.


During a pretrial motions hearing, the presiding judge held Rachel Virk, an attorney, in

contempt of court and ordered that she be seized, arrested, and incarcerated overnight. Virk

subsequently brought a civil action, alleging claims of false imprisonment, negligence per se, gross

negligence, civil conspiracy, and respondeat superior against Loudoun County Deputy Sheriff Ken

Hollaway, Loudoun County Sheriff Michael L. Chapman, Loudoun County Deputy Clerk of Court

Susan Barbini, and Loudoun County Clerk of the Circuit Court Gary L. Clemens (collectively, "the

defendants"). On appeal, Virk assigns several errors to the judgment of the circuit court sustaining

the defendants' demurrers and dismissing her case. For the reasons that follow, we affirm the

judgment of the circuit court.

BACKGROUND[1]

I. The Summary Contempt Judgment

On January 31, 2020, Rachel Virk appeared in Loudoun County Circuit Court before Judge James P. Fisher on an emergency pretrial motion in a pending divorce matter. Virk represented one of the parties to the matter and argued on her client's behalf. At one point in the proceeding, Virk persistently challenged the court's ruling. The following exchange ensued:

Virk:          So if you would explain and I would ask for the record your statutory justification what is the ordinary --

Judge Fisher:  -- ma'am, ma'am, ma'am --

Virk:          -- course of business and mutually agreed --

Judge Fisher:  -- ma'am, don't go there.

Virk:          Well, I want to go there.

Judge Fisher:  No.

Virk:          That's what this is all about. With all due respect --

Judge Fisher:  -- no, I don't think you're being --

Virk:          -- how can Your Honor --

Judge Fisher:  --respectful, ma'am. I think you're being disrespectful.

Virk:          I --

Judge Fisher:  -- that's the opposite of respectful. You've heard the court's ruling. We're going to move on.

Virk:          I need the justification --

Judge Fisher:  -- you're not going to argue with me here today.

---

[1] On appeal of a demurrer, we view the facts in the light most favorable to the plaintiff below, taking as "admitted the facts expressly alleged [in the complaint] and those which fairly can be viewed as impliedly alleged or reasonably inferred from the facts alleged." *Hooked Grp. LLC v. City of Chesapeake*, 298 Va. 663, 667 (2020) (quoting *Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226 (2001)); *see also Qui v. Huang*, 77 Va. App. 304, 317 (2023).

Virk:                  -- for the record.

Judge Fisher:  I've given you justification for the record, ma'am.

Virk:                  So I'm not clear what that is.  Under 103 --

Judge Fisher:  -- well, let me make something clear --

Virk:                  -- is that what you say?

Judge Fisher:  If you keep arguing with me, you're going to be held in contempt.  Is that clear?

Virk:                  Yes, Your Honor.

Judge Fisher:  All right.  Let's go to the next one.  Letter D.

Virk:                  As clarification, does [my client] need permission to use business assets?

Judge Fisher:  Let's go to letter D.

Virk:                  I don't know Your Honor's ruling.

Judge Fisher:  (Banging gavel.).  You're held in contempt, ma'am.

The judge immediately instructed Deputy Hollaway to "[t]ake custody of Mrs. Virk.  Step her back."  Judge Fisher continued, declaring, "I impose a penalty of $250 and one night in the county jail.  This matter is adjourned."  The judge then left the courtroom, and the proceeding adjourned before Virk could respond.

Barbini, a deputy clerk of the circuit court, served as Judge Fisher's courtroom clerk during the proceeding.  Barbini prepared and endorsed a "Form DC-352," a commitment order generated by the Supreme Court of Virginia Office of the Executive Secretary, directing that Virk be remanded to the custody of the sheriff.  Under a column on the form titled, "Virginia Crime Code," in an area designated "Description: CIVIL CONTEMPT," Barbini hand-wrote the following: "As a civil contempt sanction the court orders that Rachel Virk is remanded to custody for one (1) night in Jail and a $250.00 fine."  The form did not indicate a specific statutory subsection under which Virk was being charged and punished for contempt.  Barbini

later amended the Form DC-352 to add the phrase "[t]o [b]e released at 9:00 am" to the language indicating the sentence duration and fine amount.

Upon the order of Judge Fisher, Hollaway took custody of Virk in the courtroom. Hollaway then transported Virk to the Loudoun County Adult Detention Center, where she remained until the following morning. Upon her release from the detention center, Virk received a copy of the Form DC-352; her copy did not include Barbini's handwritten amendment. Neither the original Form DC-352 nor Virk's copy contained Judge Fisher's signature.

## II. The Present Action

On April 5, 2021, about 14 months after the underlying proceeding, Virk filed a complaint in the Loudoun County Circuit Court[2] alleging false imprisonment against Hollaway; negligence per se against Barbini; and gross negligence and civil conspiracy against both Hollaway and Barbini. Virk also alleged respondeat superior claims against Clemens and Chapman, respectively.

Virk amended her first complaint solely to correct the spelling of Hollaway's name. The defendants filed demurrers to Virk's first amended complaint, and the circuit court held a hearing at which both parties presented argument.[3] The court sustained the defendants' demurrers as to false imprisonment and negligence per se, dismissing the claims with prejudice. The circuit court found that "there [wa]s no question" that Judge Fisher granted Hollaway the legal authority to take Virk into custody and keep her overnight, and thus, Hollaway had a legal excuse that

---

[2] The judges of Loudoun County Circuit Court all recused themselves from hearing any matters pertaining to this case and requested that the Chief Justice of the Supreme Court appoint a judge to the matter. The Honorable Joanne F. Alper was appointed as Judge Designate.

[3] The record before us on appeal does not include a transcript of this portion of the proceeding. It is only by the Judge Designate's comment contained within the portion of the transcript included in the record, "The Court has considered the demurrers in this case . . . and the arguments that I heard here this morning," that we are aware such arguments took place.

defeated Virk's false imprisonment claim. It similarly found that Barbini acted within her authority in signing the Form DC-352 order. The court sustained the defendants' demurrers as to the remaining claims but granted Virk 30 days' leave to amend.

Virk filed a second amended complaint re-alleging her claims of gross negligence, civil conspiracy, and respondeat superior asserted in the first amended complaint. The defendants demurred to Virk's second amended complaint. At a hearing on these demurrers, Virk argued that, by failing to obtain "written authority from a judicial officer to put someone in jail," Barbini and Hollaway acted with gross negligence in "stop[ping] the regular process" once Hollaway seized Virk. Virk further argued it was a "shock to the conscience of [a] citizen" that Hollaway would "blatantly ignore" "requirements" Virk contended were "known to all officers."

Relying on an unpublished opinion of this Court,[4] the circuit court determined that Judge Fisher's oral order from the bench was a valid order and, therefore, Barbini and Hollaway's actions were not grossly negligent. The circuit court sustained the demurrers and dismissed with prejudice the gross negligence and civil conspiracy claims against Barbini and Hollaway. Virk's related respondeat superior claim against Clemens, whom Virk alleged was liable for the actions of Barbini, was similarly dismissed with prejudice. The respondeat superior claim against Chapman, whom Virk alleged was liable for the actions of Hollaway, was dismissed "in accordance with the underlying Counts against Hollaway." The circuit court permitted Virk to amend her complaint a third time to solely re-allege under the Virginia Tort Claims Act ("VTCA") ordinary negligence against Hollaway and the related respondeat superior claim against Chapman.

---

[4] *Hosier v. Hosier*, No. 0767-06-1, slip op. at 14 (Va. Ct. App. Feb. 20, 2007) ("Trial courts have authority to make oral orders from the bench.").

Virk filed a third amended complaint asserting an ordinary negligence claim against Hollaway and a respondeat superior claim against Chapman. Hollaway and Chapman both filed demurrers. At a hearing, Virk acknowledged that instead of bringing her claims under the VTCA, she raised the same theories that the court previously rejected. The circuit court ultimately concluded that Virk "had enough bites of this apple." In a final order, the circuit court sustained the defendants' demurrers and dismissed Virk's third amended complaint with prejudice. Virk now appeals.

## ANALYSIS

### I. The Significance of the Summary Contempt Judgment

Virk's claims, in large part, purport to turn on whether Judge Fisher's oral order to "[t]ake custody of Mrs. Virk. Step her back. I impose a penalty of $250 and one night in the county jail[,]"[5] and the subsequent Form DC-352 prepared by Barbini, comport with the requirements delineated under Code § 18.2-456. But Virk's claims misunderstand the issue. The crux of this case is not whether Judge Fisher's oral order and the Form DC-352 comply with Code § 18.2-456. Rather, the question before us concerns the legitimacy of the actions undertaken by the defendants in response to Judge Fisher's oral order. The extent to which Hollaway and Barbini were obligated to act pursuant to Judge Fisher's oral order is the fulcrum of our inquiry.

---

[5] In a separate proceeding, this Court determined that it had no jurisdiction to hear Virk's appeal of the underlying contempt proceeding because "the clerk's order from which [Virk] appeals is not a final order of conviction that was appealable to this Court." *Virk v. Commonwealth*, No. 0377-20-4 (Va. Ct. App. Aug. 14, 2020) (order). Contrary to Virk's assertion at oral argument, this Court rendered no judgment regarding the validity of a contempt order. Thus, we are in no way bound by any earlier determination of this Court.

*A. The Court's Contempt Powers*

Under the Virginia Constitution, all courts of the Commonwealth maintain inherent power and authority to summarily punish for contempt.[6] Va. Const. art. IV § 14. "Contempt under Virginia law is 'an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute.'" *Abdo v. Commonwealth*, 64 Va. App. 468, 476 (2015) (quoting *Robinson v. Commonwealth*, 41 Va. App. 137, 142 (2003)). "It has long been recognized and established that a court is invested with power to punish for contempt." *Higginbotham v. Commonwealth*, 206 Va. 291, 294 (1965); *Parham v. Commonwealth*, 60 Va. App. 450, 455 (2012) (explaining that the "power to punish for contempt is inherent in, and as ancient as, courts themselves" (quoting *Carter v. Commonwealth*, 2 Va. App. 392, 395 (1986))). However, this power of the courts is a "delicate one" that must be exercised with care to "avoid arbitrary or oppressive conclusions." *Cooke v. United States*, 267 U.S. 517, 539 (1925); *see also Amos v. Commonwealth*, 61 Va. App. 730, 742 (2013) (en banc), *aff'd*, 287 Va. 301 (2014).

To strike the appropriate balance, the General Assembly has limited the summary contempt power of Virginia courts to the following circumstances:

1. Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice;
2. Violence, or threats of violence, to a judge or officer . . . ;
3. Vile, contemptuous, or insulting language addressed to or published of a judge . . . ;
4. Misbehavior of an officer of the court in his official character;
5. Disobedience or resistance of an officer of the court, juror, witness, or other person . . . ; and
6. Willful failure to appear before any court or judicial officer as required after having been charged with a felony . . . .

---

[6] Even so, "[t]he power to punish for contempts is inherent in the courts, and is conferred upon them by the Constitution by the very act of their creation." *Carter v. Commonwealth*, 96 Va. 791, 809 (1899).

Code § 18.2-456(A)(1)-(6). Additionally, the statute requires that a judge "indicate, in writing, under which subdivision in subsection A a person is being charged and punished for contempt." Code § 18.2-456(B).[7] Although the current iteration of the statute requires a writing, the statute itself does not preclude a court from exercising its inherent powers to facilitate and maintain order within its courtroom so as to administer justice. Whether or not a circuit court has issued a contempt order comporting with the law is a separate question from whether a circuit court possesses the authority to hold an individual in contempt and to have court officials comply with this authority. It is with the latter point that we concern ourselves here.

### B. Judge Fisher's Oral Order

The validity of an oral order of a court is well established in Virginia law. *See Robertson v. Commonwealth*, 181 Va. 520, 529 (1943) (recognizing "verbal commands, directions, or orders of the court" as valid orders of the court subject to compliance). An oral order, like a written order, is "a judgment duly pronounced" and thus a "judicial act of the court." *Jefferson v. Commonwealth*, 269 Va. 136, 139 (2005). Our Supreme Court has recognized the oral order as imperative to the regulation of the courtroom and the administration of justice and found that "to limit or confine such 'order' to one which has been reduced to writing" would "exclude and leave unpunishable in summary contempt proceedings the verbal commands, directions or orders

---

[7] Before the turn of the 20th century, a Virginia statute required that, in summary contempt proceedings, a judge "make an entry of record, in which shall be specified the conduct constituting such contempt[.]" Code § 3768 (1887) (predecessor to Code § 18.2-456). In 1904, the General Assembly removed the writing requirement. Its omission continued for over 100 years. *See* Code § 3768 (1904); *see also* Code § 4521 (1942); Code § 18-255 (1950); Code § 18.1-292 (1960); Code § 18.2-456 (1975); *cf.* Code § 18.2-456(B). Yet in 2019, the General Assembly resurrected the statutory writing requirement for summary contempt proceedings. Code § 18.2-456(B). The legislature's recent restoration of the writing requirement following a century-long hiatus supports the notion that it "chooses statutory language with care." *Eley v. Commonwealth*, 70 Va. App. 158, 166 (2019) (quoting *Spratley v. Commonwealth*, 69 Va. App. 314, 319 (2018), *aff'd*, 298 Va. 187 (2019)). The General Assembly purposefully reinstituted the requirement that, in a summary contempt proceeding, a court must state expressly the basis for its finding of contempt.

of the court." *Robertson*, 181 Va. at 529.[8] The Court further noted that to contend otherwise would "deprive the courts of their 'inherent power of self-defense and self-preservation,' and would 'so far diminish their authority' 'as to render them incapable of the efficient exercise of their functions.'" *Id.* at 531 (quoting *Yoder v. Commonwealth*, 107 Va. 823, 828-31 (1907)). A court's oral commands, directions, and orders are a valid exercise of its inherent power to safeguard the administration of justice and, thus, compels the same compliance as though issued in writing.

Recognizing the authority of a court's oral order does not, of course, negate "the firmly established law of this Commonwealth that a trial court speaks only through its written orders[.]" *Kosko v. Ramser*, 299 Va. 684, 689 (2021) (quoting *Davis v. Mullins*, 251 Va. 141, 148 (1996)). Rather, "the familiar legal maxim that courts speak only through their written orders 'deals with evidence of judicial action, that is, a declaration of historical fact. The statement, however, does not purport to govern the substantive validity of the judicial act.'" *Lewis v. Commonwealth*, 295 Va. 454, 465 (2018) (quoting *Jefferson*, 269 Va. at 140). This maxim applies specifically to the recording of a court ruling for purposes of final resolution of the issue before the court. *See Cunningham v. Smith*, 205 Va. 205, 208 (1964) (establishing that the "record spoken of in [the Virginia Constitution] is that [order book in which are kept the proceedings, orders and judgments of a court] which distinguishes a court of record from one not of record," and therefore "[a] court speaks only through its orders"); *Russell v. Commonwealth*, 79 Va. App. 618, 623-24 (2024) (recognizing that the finality provisions of Rule 1:1 support the "firmly

---

[8] Of course, at the time the Supreme Court decided *Robertson v. Commonwealth*, Code § 4521 (1942) (predecessor to Code § 18.2-456) did not include a writing requirement. Yet the principle remains—as true now as then—that an oral order or directive of a court just as readily commands obedience as one reduced to writing. *See Robertson*, 181 Va. at 537-38 ("The fact that a witness may disagree with the court on the propriety of its ruling is, of course, no excuse for his not complying with it.").

established law . . . that a trial court speaks only through its written orders" (quoting *Kosko*, 299 Va. at 689)). *See also Commonwealth v. Williams*, 262 Va. 661, 668 (2001) ("This language generally refers to instances when some conflict or ambiguity exists between the language expressed in a transcript and a court's order, when an order fails to reflect an action allegedly taken by one or more parties, or when a court's order fails to reflect the compliance with a jurisdictional requirement. . . . [T]his language [has also been used] to emphasize the finality of court orders, which cannot be modified by later conduct of the parties that fails to result in a subsequent order suspending or vacating an initial order."). In other words, a court only speaks *with finality* through its written orders. But because here we address the apparent authority—and not the finality—of a court's oral order, the primacy of oral versus written orders has no bearing on our analysis.

In verbally directing that Virk be taken into custody and punished for summary contempt, Judge Fisher rendered a judicial act. By exercising his inherent authority to pronounce orders from the bench, Judge Fisher appeared to clothe under color of law the subsequent actions of Hollaway and Barbini. Put differently, regardless of whether Judge Fisher properly effected a summary contempt conviction, he in fact possessed the authority to direct Hollaway and Barbini to "[t]ake custody" of Virk, to "[s]tep her back," and to fine and jail her. Accordingly, Hollaway and Barbini acted pursuant to the judge's authority and consistent with their respective roles within the court.

## II. The Defendants' Demurrers

Virk contends that the circuit court erred in sustaining the defendants' demurrers to her false imprisonment, gross negligence, negligence per se, civil conspiracy, and respondeat superior counts. We address Virk's claims as to each count in turn.

- 10 -

*A. Standard of Review*

We review de novo a circuit court's decision to sustain a demurrer. *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). "When a court dismisses a complaint on demurrer, we assume without any corroboration that factual allegations made with 'sufficient definiteness' are presumptively true." *Morgan v. Bd. of Supervisors*, 302 Va. 46, 52 (2023) (quoting *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 514 (2014)). This presumption extends to "all properly pled facts and all inferences fairly drawn from those facts." *Padula-Wilson v. Landry*, 298 Va. 565, 574 (2020) (quoting *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 204 (2007)). A reviewing court is "confined to those facts that are expressly alleged, impliedly alleged, and which can be inferred from the facts alleged." *Harris v. Kreutzer*, 271 Va. 188, 196 (2006). Yet, "[i]f the pleading fails to state a cause of action, then the demurrer should be sustained." *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 255 (2017).

*B. False Imprisonment*[9]

Virk argues that, although initially lawful, Hollaway's seizure of her turned unlawful

once Hollaway continued custody and placed Virk in detention pursuant to an invalid Form

DC-352. In so arguing, Virk divorces her initial seizure from her overnight detention, asserting

---

[9] Regarding Virk's false imprisonment claim, the call is close as to whether Virk properly preserved her objection. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Referred to as the "contemporaneous objection rule," this provision of Rule 5A:18 serves "'to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials.'" *Williams v. Gloucester Sheriff's Dep't*, 266 Va. 409, 411 (2003) (quoting *Reid v. Boyle*, 259 Va. 356, 372 (2000)) (concluding that this Court did not err in applying Rule 5A:18 to hold that the appellant failed to preserve his issues for appeal).

Virk did not submit a brief or memoranda of law in response to the defendants' demurrers to her first amended complaint. At a subsequent hearing on the demurrers, the circuit court advised the parties that its ruling was based, in part, on "the arguments that [the court] heard here this morning." Our record does not include a transcript of that portion of the hearing. The circuit court gave Virk's counsel leave to submit a "list" of written objections to "articulate [Virk's objections] with more specificity." Counsel endorsed the court order as simply, "[s]een and objected to for the reasons stated in brief and on the record at hearing on the defendants' demurrer." No further objections were filed, and, further, the record before us does not include the transcript of that morning's hearing. Thus, we do not know the specific basis for Virk's objections to the circuit court's ruling and the errors assigned thereto. Generally, such deficiency constitutes waiver of the argument on appeal. *See* Rule 5A:18. *See also City of Richmond v. Prop. Ventures, Inc.*, 80 Va. App. 538, 554 (2024) ("Though the final order notes that it was 'seen and objected to' by the City, the City's failure to articulate a specific objection means that we may not address its argument here.").

However, where "'the ruling made by the trial court was narrow enough to make obvious the basis of appellant's objection,'" a "seen and objected" endorsement can be sufficient to preserve an objection. *Pui Ho v. Rahman*, 79 Va. App. 677, 688 (2024) (quoting *Mackie v. Hill*, 16 Va. App. 229, 231 (1993)). It is not the role of this Court to mine a record for precious stones of preservation. However, the record before us reflects the circuit court's carefully contextualized ruling on Hollaway's demurrer to Virk's false imprisonment claim sufficient to apprise us of the bounds of Virk's arguments that form the "reasons stated . . . at hearing on the defendants' demurrer." Notably, Hollaway does not raise the preservation question. For these reasons, we consider the merits of Virk's assignments of error as to the circuit court's ruling on the false imprisonment claim.

that Hollaway's act of *maintaining* Virk in custody overnight constitutes false imprisonment.[10] We disagree.

In an action for false imprisonment, a complainant must plead that "[(1)] her liberty was restrained, either by words or acts that she would fear to disregard, and that [(2)] there was no sufficient legal excuse to justify the restraint." *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 114 (2021). The "gist of [false imprisonment] is the illegal detention of the person, without lawful process, or the unlawful execution of lawful process." *Id.* (alteration in original) (quoting *Montgomery Ward & Co. v. Wickline*, 188 Va. 485, 489 (1948)). "If the plaintiff's arrest was lawful, the plaintiff cannot prevail on a claim of false imprisonment." *Lewis v. Kei*, 281 Va. 715, 724 (2011).

According to Virk's pleadings, "Hollaway seized Virk upon oral order of Judge Fisher, but maintained custody of Virk without legal authority to do so." Virk admits that Hollaway seized her consistent with Judge Fisher's oral order, and we accept this factual assertion as true. *Padula-Wilson*, 298 Va. at 574 ("[W]e accept as true all properly pled facts and all inferences fairly drawn from those facts." (quoting *Augusta Mut. Ins. Co.*, 274 Va. at 204)). But we are not obligated to accept Virk's legal conclusion that Hollaway maintained custody without the legal authority to do so. *See Harris*, 271 Va. at 196 (a reviewing court is "confined to those *facts* that are expressly alleged, impliedly alleged, and which can be inferred from the facts alleged" (emphasis added)).

---

[10] Virk's first amended complaint is quite bare of facts to support her false imprisonment claim. Rather, Virk alleges a myriad of conclusory statements. This Court is not bound to accept conclusory allegations, and a mere conclusory statement does not satisfy the pleading requirement to allege facts upon which relief can be granted. *See Dean v. Dearing*, 263 Va. 485, 490 (2002) (holding that mere conclusory statements "do[ ] not satisfy the pleading requirement" necessary to withstand a demurrer).

Virk's pleadings harbor an internal inconsistency, since her admission that Hollaway properly *seized* her upon the oral order of Judge Fisher necessarily defeats her argument that Hollaway *maintained* her without legal excuse. *See Lewis*, 281 Va. at 724. Hollaway's subsequent acts of maintaining Virk in custody and detaining her overnight were taken in furtherance of the same oral order. As we stated *supra*, Judge Fisher possessed the authority to issue the oral order. The circuit court here reached the same conclusion: that Virk's allegations establish that Hollaway "clearly had the authority to take [Virk] into custody," and legal excuse to keep her overnight.

In the alternative, Virk asks that, instead of deciding this issue based on Hollaway's actions pursuant to Judge Fisher's oral order, this Court fix on whether Judge Fisher's order complied with Code § 18.2-456(B)'s requirement that a judge "indicate, in writing, under which subdivision in subsection A a person is being charged and punished for contempt." Virk correctly contends that Judge Fisher failed to reduce his oral summary contempt order to writing consistent with the statute. But a judge's failure to enter an order compliant with statute cannot serve as a basis for Virk's false imprisonment claim against Hollaway. The salient consideration here is Hollaway's conduct. Because Hollaway maintained custody of Virk pursuant to Judge Fisher's oral order and at the judge's direction, Virk's false imprisonment claim necessarily fails.

Thus, we hold that Virk did not sufficiently plead her claim of false imprisonment against Hollaway.

*C. Gross Negligence*

As we recently stated,

> "Gross negligence is 'a degree of negligence showing indifference
> to another and an utter disregard of prudence that amounts to a
> complete neglect of the safety of such other person.'" [It] "is a
> heedless and palpable violation of legal duty respecting the rights
> of others which amounts to the absence of slight diligence, or the
> want of even scant care." "Gross negligence 'requires a degree of

negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness.'"

*Howard v. Harris*, 80 Va. App. 365, 379 (2024) (citations omitted) (quoting *Elliott v. Carter*, 292 Va. 618, 622 (2016)). Moreover, "[d]eliberate conduct is 'important evidence on the question of gross negligence.'" *Chapman v. City of Va. Beach*, 252 Va. 186, 190 (1996) (quoting *Kennedy v. McElroy*, 195 Va. 1078, 1082 (1954)). Although it need not "specify[ ] the particulars of the negligence," *see* Rule 3:18, a properly pleaded gross negligence claim should at least allege facts that demonstrate an utter disregard of prudence amounting to a complete neglect of the safety of others. *See Doe v. Baker*, 299 Va. 628, 640 n.4 (2021) ("A complaint should, at a minimum, provide basic notice to a defendant concerning liability.").

Virk contends her allegations that "Hollaway had a duty not to take action that interfered with Virk's constitutional right to be free from false imprisonment" and that Hollaway breached this duty when he "took Virk into custody and deprived her of her liberty without probable cause to do so, and without a valid Order from the Court directing him to do so," sufficiently demonstrates Hollaway's utter disregard of prudence. For the reasons we discuss, *supra*, and as pleaded by Virk, Hollaway acted with legal excuse in taking and maintaining Virk in custody pursuant to "a valid Order from the Court directing him to do so." Moreover, because he acted with legal excuse, we cannot say that Hollaway had any heightened duty beyond that which he exercised—to obey Judge Fisher's oral order. His actions did not demonstrate deliberate conduct that threatened Virk's safety, nor do the pleadings indicate, beyond bare assertions, that Hollaway's actions lacked slight diligence or "the want of even scant care." *Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378 (1945) (quoting *Thomas v. Snow*, 162 Va. 654, 661 (1934)). In sum, we cannot say that, as pleaded, Hollaway's conduct would constitute "indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Commonwealth v. Giddens*, 295 Va. 607, 613 (2018) (quoting *Cowan v.*

- 15 -

*Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004)).  The circuit court properly sustained

Hollaway's demurrer.

We also reject Virk's assertion that Barbini's alleged conduct constituted gross

negligence.  With provocative fervor, Virk argues that Barbini "illegally sign[ed] a contempt

order compelling someone to jail."  Yet her first amended complaint asserts no facts which

would support a claim that Barbini demonstrated lack of "slight diligence, or the want of even

scant care."  *Johnson*, 184 Va. at 378 (quoting *Thomas*, 162 Va. at 661).  According to Virk's

own pleadings, Barbini, in preparing the Form DC-352, acted diligently and under color of

authority—that is, in response to Judge Fisher's oral order.  Barbini even amended the form to

ensure Virk's release was precisely consistent with Judge Fisher's directive of "one night in the

county jail."  As with the claim against Hollaway, Virk failed to allege any facts to support a

claim that Barbini acted with "indifference to another and an utter disregard of prudence that

amounts to a complete neglect of the safety of such other person."  *Giddens*, 295 Va. at 613

(quoting *Cowan*, 268 Va. at 487).  Virk's allegations fall short of the pleading necessary to

maintain a claim of gross negligence against Hollaway or Barbini, and the circuit court did not

err in sustaining the defendants' demurrers.

D.  *Negligence Per Se*[11]

Virk contends that the circuit court erred in sustaining Barbini's demurrer to her claim of

negligence per se.  Specifically, Virk argues that, instead of limiting its consideration to

---

[11] The same waiver analysis we applied to Virk's false imprisonment claim, *supra* n.9, also applies to Virk's negligence per se claim.  But in this instance, it yields a contrary result.  In the portion of the transcript included in the record, the circuit court did not address the parties' arguments regarding sovereign immunity or whether and to what extent sovereign immunity figured into its ruling.  Due to a portion of the transcript being omitted from the record and the lack of specific objections to the court's ruling, and because in the ruling portion of the transcript included in the record the circuit court did not discuss sovereign immunity in its ruling, we cannot rely on *Rahman* to save Virk's unpreserved sovereign-immunity arguments.

Barbini's claim of sovereign immunity raised in her responsive pleading, the circuit court "usurped the role of the jury" and "declared" its inability to "'find anything in [the] complaint that certainly arises to a negligence claim.'" Virk also argues that the circuit court "did not apply the proper standard for evaluation of a demurrer" and "ignored" both Code § 17.1-291.1 and the Circuit Court Clerks' Manual. Finally, Virk contends that the circuit court erred in denying her the opportunity to amend her complaint. We find no error on the part of the circuit court.

A demurrer tests the sufficiency of a pleading. In evaluating a demurrer, the prevailing question is whether, assuming the truth of the factual allegations and their reasonable inferences, the complaint states a cause of action for which relief may be granted. Here, Virk pleaded, and presumably argued,[12] a cause of action based upon a theory of negligence per se. In her amended complaint, Virk alleged that Barbini "had a common law duty to not commit fraud by executing a Court Order without authority" and to not "execute" court orders beyond the bounds of Code § 17.1-219.1. Virk further alleged that Barbini breached these duties and that Virk suffered injury due to "the negligence per se which Barbini committed." We hold that, because Virk failed to state a cause of action for which relief could be granted to her, the circuit court did not err in sustaining Barbini's demurrer.

Negligence per se is a derivative of common law simple negligence. It "only exists 'where there is a common-law cause of action.'" *A.H. v. Church of God in Christ, Inc.*, 297 Va.

---

[12] The record does not include a transcript of counsel's arguments before the circuit court, and Virk's objections to the order are non-specific. *See* Rule 5A:8(b)(4)(ii) ("When the appellant fails to ensure that the record contains transcripts . . . necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered."); Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."). In deeming Virk's argument preserved, we infer from the circuit court ruling—a transcript of which was included in the record—the parameters and content of Virk's arguments as to the negligence per se claim sufficient to review her assignment of error.

604, 630 (2019) (emphasis omitted) (quoting *Parker v. Carilion Clinic*, 296 Va. 319, 345

(2018)). "[T]he negligence per se 'doctrine does not *create* a duty of care' but 'merely sets a

standard of care by which the defendant may be judged in the common-law action,' and thus,

'[t]he absence of an underlying common-law duty renders the presence of a statutory standard of

care irrelevant.'" *Id.* at 631 (second alteration in original) (emphasis added) (quoting *Parker*,

296 Va. at 345). Thus, as our Supreme Court recognized in *Parker v. Carilion Clinic*,

> a negligence per se claim predicated on a statutory violation
> "requires a showing that [i] the tortfeasor had a duty of care to the
> plaintiff, [ii] the standard of care for that duty was set by statute,
> [iii] the tortfeasor engaged in acts that violated the standard of care
> set out in the statute, [iv] the statute was enacted for public health
> and safety reasons, [v] the plaintiff was a member of the class
> protected by the statute, [vi] the injury was of the sort intended to
> be covered by the statute, and [vii] the violation of the statute was
> a proximate cause of the injury."

296 Va. at 346 (alterations in original) (quoting *Steward v. Holland Family Props., LLC*, 284 Va.

282, 287 (2012)). *See also Collett v. Cordovana*, 290 Va. 139, 148 (2015) (noting that the

"well-established" elements of negligence per se include "that the defendant violated a statute

enacted for public safety" and that "the plaintiff . . . belong[ed] to the class of persons for whose

benefit the statute was enacted, and demonstrate[d] that the harm that occurred was of the type

against which the statute was designed to protect" (quoting *Kaltman v. All American Pest

Control, Inc.*, 281 Va. 483, 496 (2011))).

Contrary to her assertions, Virk's amended complaint does not allege all the elements of

negligence per se. In support of her claims, Virk instead relies on her own conclusory statements

that Barbini had "a common law duty to not commit fraud by executing a Court Order without

authority" and "a duty not to execute Orders of the Court beyond the confines of [Code]

§ 17.1-219.1" and that "Barbini's negligent breach of her common law duties as codified by

[Code] § 17.1-219.1" was the proximate cause of her damages. Virk does not allege (1) the

standard of care set forth in Code § 17.1-219.1 upon which she relies; (2) a public health and safety reason for the enactment of the statute; (3) that she was of the class protected by the statute; and (4) that her injury was of the type contemplated by the statute. Thus, Virk's allegations, as pleaded, are insufficient to rise to the level of a claim of negligence per se, let alone such a claim based on Code § 17.1-219.1. *See Collett*, 290 Va. at 149 (holding appellant failed to state a valid cause of action for negligence per se). Accordingly, we find no error in the circuit court's ruling that nothing in the amended complaint "certainly arises to a negligen[ce] per se claim."

Virk nevertheless contends that the circuit court "did not apply the proper standard for evaluation of a demurrer" because instead of addressing the sovereign immunity claim raised in Barbini's responsive pleadings, the circuit court "addressed the merits of the case" and, in doing so, "ignored both the statute and the Clerk's Manual."[13] For several reasons, we find Virk's contention unavailing.

First, when evaluating a demurrer, a trial court must consider the sufficiency of alleged facts and their reasonable inferences as measured against the relevant law and statutes. *See, e.g.*, *Friends of Rappahannock v. Caroline Cnty. Bd. of Supervisors*, 286 Va. 38, 44 (2013) ("To survive a challenge by demurrer, a pleading must be made with 'sufficient definiteness to enable the court to find the existence of a *legal basis* for its judgment.'" (emphasis added) (quoting *Eagle Harbor, L.L.C. v. Isle of Wight Cnty.*, 271 Va. 603, 611 (2006))). Here, the circuit court had an obligation to consider Code § 17.1-219.1 in deciding Barbini's demurrer. What is more, by alleging that Barbini had "a duty not to execute Orders of the Court beyond the confines of [Code] § 17.1-219.1," Virk invited the circuit court to consider what the "confines" of the statute

_____

[13] Barbini's adherence to the Circuit Court Clerks' Manual is not relevant to the question of whether Barbini violated a statutory duty, and thus we need not address Virk's argument on this point.

- 19 -

were when it evaluated the sufficiency of Virk's claim. *See Kellermann v. McDonough*, 278 Va. 478, 487 (2009) ("The issue [regarding] whether a legal duty in tort exists is a pure question of law."). That such consideration may implicate the merits of a claim—and thereby render futile a complainant's meritorious pursuit—does not transform the nature of a circuit court's proper inquiry regarding the sufficiency of the pleading to one adjudicating the merits of its claims.

Second, Code § 17.1-219.1 is inapplicable. Code § 17.1-219.1 provides,

> In a criminal proceeding, upon authorization by the judge, the clerk of a circuit court may issue orders for commitment of the defendant or orders for release of the defendant to the appropriate custodian when the judge has ordered the defendant (i) to be committed to custody upon a denial of bail, upon a revocation of bail or upon a change in bail condition, (ii) to be continued in custody upon a continuance of the proceeding, or (iii) to be released upon meeting bail requirements, upon being sentenced to time already served or upon being found not guilty.

The statute expressly applies in the context of criminal proceedings, when a judge has ordered one of three specific types of commitments. A summary contempt proceeding is not inherently criminal in nature. Summary contempt itself is uniquely situated, straddling the realms of the criminal and civil. *See Gilman v. Commonwealth*, 275 Va. 222, 231 (2008) ("[Summary] contempt adjudications are not 'criminal prosecutions' subject to the protections of the Sixth Amendment."); s*ee also Amos*, 61 Va. App. at 742-43 (quoting *In re Oliver*, 333 U.S. 257, 275 (1948), to identify "charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business" as a "narrow exception" to due process requirements). Moreover, the jail sentence imposed by Judge Fisher's order did not constitute one of the types of commitments delineated in the statute. Although Barbini had a general duty to the public not to execute a court order without authority, here Judge Fisher ordered Virk's confinement, and thus

- 20 -

authorized Barbini, as a deputy clerk, to carry out his order.[14]  *See Epps v. Commonwealth*, 47

Va. App. 687, 702 (2006) (en banc) ("[I]f a court has jurisdiction of the parties and legal

authority to render the order, then it must be obeyed even though it was erroneous or

improvidently entered." (quoting *Robertson*, 181 Va. at 537)), *aff'd*, 273 Va. 410 (2007).  In

sum, we cannot say that Code § 17.1-219.1, which governs transportation of inmates in criminal

proceedings, constitutes a limit on a deputy clerk's authority to prepare a transportation order in

a summary contempt proceeding.

Finally, the circuit court was not obligated to address Barbini's sovereign immunity

claim.  In response to Virk's amended complaint, Barbini asserted both a demurrer and plea in

bar—an awkward melding that merges into a single paragraph two distinct pleadings.[15]

---

[14] Virginia does recognize a common-law duty not to execute orders beyond statutory authorization.  *See Erikson v. Anderson*, 195 Va. 655, 660 (1954) (holding that "[public officials] are under the legal obligation and duty to confine their acts to those which they are authorized by law to perform").  However, as our Supreme Court has recognized, "[w]hen a negligence claim is made against a public official, a distinction must be drawn between the official's public duty owed to the citizenry at large and the official's special duty owed to a specific, identifiable person or class of persons."  *Burdette v. Marks*, 244 Va. 309, 312 (1992).  As the Court explained in *Burns v. Gagnon*, 283 Va. 657 (2012),

> [W]e have repeatedly been hesitant to recognize a special relationship where a public official is being sued for acts committed in his official capacity.  *See, e.g.*, [*Marshall v. Winston*, 239 Va. 315, 319 (1990)] (holding that a sheriff and a jailer had no special relationship with a member of the general public); [*Fox v. Custis*, 236 Va. 69, 75-76 (1988)] (concluding that two parole officers did not have a special relationship with a parolee).  The reason for our hesitation, we have explained, is that "it is not in society's best interest to subject public officials to potential liability for every action undertaken."

*Id.* at 671 (quoting *Burdette*, 244 Va. at 312).  Yet, here we need not engage in such analysis to determine the existence of a special-duty relationship between Virk and Barbini, as Virk does not allege that Barbini owes her a special duty.

[15] Regarding Virk's claim of negligence per se, Barbini's demurrer and plea in bar consists of three sentences.  Barbini first asserted that Virk "does not state facts to support a reasonable finding of fact in [her] favor regarding the alleged negligence per se of Deputy Clerk

Nevertheless, in presenting two separate challenges to Virk's complaint, Barbini offered the circuit court a choice of grounds on which to dispense with the negligence per se claim. It was within the discretion of the court to decide the claim on the demurrer, or the plea in bar, or both. The circuit court opted to address the demurrer portion of Barbini's challenge to the amended complaint and concluded that it was unable to "find anything in [Virk's] complaint that certainly arises to a negligen[ce] per se claim." By finding that Virk failed to state an actionable claim, the circuit court precluded any consideration of sovereign immunity. In other words, by determining that Virk did not sufficiently state a claim, the circuit court did not need to find that a non-claim was barred by the doctrine of sovereign immunity.[16] And, on appeal, neither do we.

Because the circuit court considered the reasons in Barbini's demurrer and resolved the negligence per se count on those grounds, the circuit court was not obligated to address Barbini's

---

Barbini." Barbini then contended that she is protected by sovereign immunity because her alleged negligence amounts to nothing more than simple negligence, which cannot defeat a claim of sovereign immunity. Finally, Barbini concluded by relying on the demurrer standard, asserting that Virk "pled no facts which are sufficient to make a claim of negligence per se in which relief may be granted."

A plea in bar is a pleading designed to "reduce[ ] the litigation to a single issue, which, if proven, creates a bar to the plaintiff's right of recovery." *Ferguson Enters., Inc. v. F.H. Furr Plumbing, Heating & Air Conditioning, Inc.*, 297 Va. 539, 549 (2019) (quoting *Cooper Industries, Inc. v. Melendez*, 260 Va. 578, 594 (2000)). A demurrer, however, "tests the legal sufficiency of the facts alleged in the plaintiff's complaint" and will be sustained by a court where "it is clear that the plaintiff has not stated a valid cause of action." *Ogunde v. Prison Health Servs.*, 274 Va. 55, 65 (2007). While a court is not precluded from hearing both challenges simultaneously, each pleading presents a different basis for challenge and is subject to a different review standard.

[16] Even if we limited our review to the circuit court's decision not to address Barbini's sovereign immunity claim, as Virk urges, we would be compelled to find that Virk waived this argument. For the reasons we previously noted, *see supra* n.9, we do not know the specific basis for Virk's objections to the circuit court's ruling. Virk's failure to properly preserve her objections constitutes waiver of the argument on appeal. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling."); *Prop. Ventures, Inc.*, 80 Va. App. at 554-55 (same).

plea in bar of sovereign immunity. We likewise sustain Barbini's demurrer on Virk's negligence per se count, holding that Virk did not plead facts sufficient to support her claim.

### E. Civil Conspiracy

In Virk's first and second amended complaints, she asserts that Barbini and Hollaway acted "jointly and in concert" by maintaining Virk in custody overnight without a valid Form DC-352. The defendants' demurrers argued that a common law claim of civil conspiracy requires an underlying tort because it is not a "stand-alone cause of action." Because the facts do not support Virk's other claims, Barbini and Hollaway maintained that she could not prevail on her claim of civil conspiracy.

On appeal, Virk argues that civil conspiracy does not require an underlying tort. Relying on the allegations of her complaint that Barbini signed a document which she had no authority to sign and that Hollaway "relied on what he knew to be an illegal document," Virk contends that Hollaway and Barbini were engaged in concerted action "to accomplish a purpose by unlawful means," and thus she pleaded facts sufficient to support her civil conspiracy allegation.

It is true that a successful civil conspiracy claim is not limited to proof of an underlying tort.[17] *See Qiu v. Huang*, 77 Va. App. 304, 327 (2023) ("[A] common law claim of civil

---

[17] Even under a theory of underlying tortious conduct, Virk's claim is unavailing. For the reasons discussed *supra*, Virk's allegation of false imprisonment fails. Further, to the extent Virk relies on underlying negligence, her reliance is misplaced. Negligence is not an intentional tort, as one cannot conspire to be negligent. *See William v. AES Corp.*, 28 F. Supp. 3d 553, 575 (E.D. Va. 2014) ("Because negligence by definition is not an intentional wrong, one cannot agree or conspire to be negligent." (quoting *Witcher v. Reid*, 70 Va. Cir. 415, 419 (2006))); *see generally* Kent Sinclair, Charles E. Friend, *Personal Injury Law in Virginia* § 14.1 (4d ed. 2023) (distinguishing between intentional torts and tortious negligence). Virk argues that although ordinary negligence is an "unintentional wrong," gross negligence is an "intentional tort" and thus can form the basis for a civil conspiracy claim. On this point, Virk is simply wrong. It is well established in Virginia law that gross negligence "falls short of being such reckless disregard of probable consequence as is equivalent to a willful and intentional wrong." *Conrad v. Commonwealth*, 31 Va. App. 113, 121 (1999) (en banc) (quoting *Newell v. Riggins*, 197 Va. 490, 495 (1955)). Ordinary negligence and gross negligence differ only in degree, not in kind. *See Thomas*, 162 Va. at 660-61. Neither supports a claim of civil conspiracy.

conspiracy *generally* requires proof that the underlying tort was committed." (emphasis added) (quoting *Almy v. Grisham*, 273 Va. 68, 80 (2007))). "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish [a] criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Id.* (alteration in original) (quoting *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 402 (1985)). To survive demurrer, an allegation of civil conspiracy must "at least allege an unlawful act or an unlawful purpose." *Id.* (quoting *Hechler Chevrolet, Inc.*, 230 Va. at 402).

As our caselaw demonstrates, civil conspiracy involves, at a minimum, unlawful conduct—whether it be conduct committed for an unlawful purpose or by unlawful means. Thus, civil conspiracy is grounded in *either* tortious *or* unlawful conduct. Having determined that Virk failed to sufficiently plead that either Hollaway or Barbini acted tortiously, the question becomes whether Virk sufficiently pleaded that Hollaway and Barbini, in concert, acted unlawfully. And the answer is no.

Virk argues that Barbini acted unlawfully when she signed the Form DC-352, an act for which Virk contends Barbini did not have authority. Yet, the survival of Virk's conspiracy claim does not depend on the validity of the form. Instead, what is determinative is whether Barbini acted with legal authority when she prepared the Form DC-352. Judge Fisher declared that he was imposing a punishment on Virk of a $250 fine and one night in jail before leaving the courtroom. Barbini, a deputy clerk, prepared the Form DC-352 consistent with the judge's order. Hollaway, pursuant to the same oral order, seized and later detained Virk. Because both Barbini and Hollaway acted with apparent authority, conferred by Judge Fisher's order, they acted with legal excuse. *See Hechler Chevrolet, Inc.*, 230 Va. at 402 ("There can be no conspiracy to do an act which the law allows."). Virk failed to plead facts sufficient to show that Barbini and

Hollaway, through concerted action,[18] participated in unlawful or tortious conduct. Thus, the circuit court did not err in sustaining the demurrers to Virk's civil conspiracy claim.

### F. Respondeat Superior

"[A]n employer is liable for the tortious act of his employee if the employee was performing his employer's business and acting within the scope of his employment." *Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 844 (2019) (alteration in original) (quoting *Parker*, 296 Va. at 335). Thus, to successfully plead a respondeat superior claim, a plaintiff must assert that the employee's tort occurred "within the scope of the employment relationship." *Butler v. S. States Coop., Inc.*, 270 Va. 459, 466 (2005). Virk argues that "Sheriff Chapman is liable for all torts committed by Hollaway, and Clerk Clemens is liable for all torts committed by Barbini." Thus, Chapman and Clemens's liability is dependent on this Court's rulings on Hollaway and Barbini's underlying alleged torts.

Virk failed to sufficiently plead her claims of false imprisonment and gross negligence against Hollaway; thus, we hold that the facts are insufficient to sustain the same claims as to Chapman under a theory of respondeat superior. Virk likewise did not sufficiently plead her claims of gross negligence, negligence per se, and civil conspiracy against Barbini. Thus, the facts are insufficient to sustain the same claims against Clemens under a theory of respondeat superior.

---

[18] Additionally, Virk does not plead any facts demonstrating that Barbini and Hollaway acted jointly or in concert, beyond conclusory assertions such as that both "knew" their actions were unlawful. At oral argument, defendants acknowledged that *if* Virk pleaded facts demonstrating that Barbini and Hollaway *intended to and did* act with knowledge of the other's unlawful conduct or with knowledge that the other's actions were contrary to the judge's instructions, such pleading would likely survive demurrer. Virk did not so plead.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court as to Virk's claims of false imprisonment, gross negligence, negligence per se, civil conspiracy, and respondeat superior.

*Affirmed.*